ORIGINAL

**SYLVESTER OWINO**[1]
**A97-469-354**
**San Diego Detention Center (CCA)**
**P.O. Box 439049**
**San Ysidro, CA 92143**

FILED

07 DEC -3 AM 11:48

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SYLVESTER OWINO, [A97-469-354],**<br><br>**Petitioner,**<br><br>**v.**<br><br>**MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, MICHAEL MUKASEY, ATTORNEY GENERAL, ROBIN BAKER, DIRECTOR OF SAN DIEGO FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, JOHN A. GARZON, OFFICER-IN-CHARGE,**<br><br>**Respondents.** | Civil Action No.<br>'07 CV 2267 WQH (POR)<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[28 U.S.C. § 2241]** |

[1]The petitioner is filing this petition for a writ of habeas corpus with the assistance of James Fife and the Federal Defenders of San Diego, Inc., who drafted the instant petition. That same counsel also assisted the petitioner in preparing and submitting his request for the appointment of counsel. Robin Baker is the director of the San Diego field office of U.S. Immigration and Customs Enforcement. He administers federal immigration laws on behalf of the Secretary of Homeland Security in the federal judicial district for the Southern District of California. In Mr. Baker's capacity as the director of the local office of U.S. Immigration and Customs Enforcement, he has immediate control and custody over the petitioner. John Garzon is the ICE officer in charge of the detention facility holding the petitioner.

# I.

# INTRODUCTION

The petitioner, Sylvester Owino, respectfully petitions this Court for a writ of habeas corpus to remedy his unlawful detention.

Petitioner is in the custody of the Secretary of the Department of Homeland Security and the Attorney General of the United States and their employees (hereinafter "respondents"). He is detained at the respondents' detention facility in San Ysidro, California, under the control of the officer in charge.

# II.

# JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1331, 2241(c)(1) and (3), and U.S. Const. art. I., § 9, cl. 2, because the petitioner is being unlawfully detained as a result of U.S. Immigration and Customs Enforcement's misapplication of the detention provisions of 8 U.S.C. §§ 1226 & 1231. Federal district courts have jurisdiction to entertain habeas corpus petitions under 28 U.S.C. § 2241 to address the lawfulness of detentions of non-citizens by ICE. See Zadvydas v. Davis, 533 U.S. 678, 686-90 (2001); Demore v. Kim, 538 U.S. 510, 516-17 (2003); Clark v. Martinez, 543 U.S. 371, 379 (2005); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006). Moreover, his detention violates the Constitution, the laws, and the treaties of the United States, raising a federal question under 28 U.S.C. § 1331. See Magana-Pizano v. INS, 200 F.3d 603, 610 (9th Cir. 2000); Goncalves v. Reno, 144 F.3d 110, 123 (1st Cir. 1998). Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482-83 (1999), makes clear that the petitioner's habeas petition is not barred by 8 U.S.C. § 1252(g).

Venue is proper in this district because the petitioner is detained here. See 28 U.S.C. § 2241, et. seq., & 28 U.S.C. § 1391(e).

///

## III.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**Petitioner's Background**

The petitioner is a native and citizen of Kenya. He fled to the United States in December 1998, when he was 22 years old, following abuse and threats at the hands of the Kenyan police. He was lawfully admitted on a student visa.

After his admission to the United States, petitioner was convicted of second degree robbery in 2003 and was sentenced to the mid-term of three years' imprisonment.

**Removal Proceedings and Initiation of Current Detention by Respondents**

After completion of the term of imprisonment prescribed by law, petitioner was transferred to custody of the respondents on November 8, 2005, which is the beginning of his present period of detention. On April 10, 2006, a removal hearing was held. The immigration judge found petitioner removable and denied petitioner's applications for asylum and withholding of removal and denied his claim for deferral of removal under the Convention Against Torture, making an adverse credibility finding due to lack of corroboration.

**Status of Petitioner's Legal Challenges to Removal**

Petitioner timely appealed the decision of the immigration judge to the Board of Immigration Appeals. Petitioner argued that the immigration judge had erred in denying CAT relief. The BIA affirmed on August 2, 2006.

Petitioner then filed a timely petition for review *pro se* with the Ninth Circuit Court of Appeals on September 1, 2006, in Case No. 06-74297. The same day, petitioner moved for a stay of deportation pending appeal; the government filed an opposition to the stay on November 24, 2006. The Court of Appeals denied the stay of removal on February 23, 2007. Petitioner filed a motion for reconsideration en banc of the denial. Reconsideration was denied as untimely on June 5, 2007.

Petitioner's opening brief was filed on June 5, 2007. Respondents filed their brief by June 25, 2007. Petitioner's reply brief was filed on September 10, 2007. The appeal awaits assignment to a merits panel for argument and submission. However, respondents have argued for a remand to the BIA on credibility.

**Prior Challenges to Detention**

Because petitioner was found deportable on account of an aggravated felony conviction, he is subject to the mandatory detention requirements of 8 U.S.C. § 1226(c). ICE has denied petitioner release on supervision during custody reviews required by regulations, most recently in November 2006. Petitioner was denied bond by the immigration judge in December 2005.

Petitioner has filed no previous request for relief from detention with this or another court.[2]

**IV.**

**LEGAL ARGUMENT**

**THIS COURT MUST RELEASE THE PETITIONER FROM THE CUSTODY OF THE RESPONDENTS UNDER APPROPRIATE CONDITIONS OF SUPERVISION.**

In the instant action, petitioner seeks release from the custody of respondents on the basis of two recent Ninth Circuit decisions, Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), and Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006). These cases follow the Supreme Court's principles on indefinite detention laid down in Zadvydas v. Davis, 533 U.S. 678, 689 (2001), and apply them to detainees subjected to prolonged detention and whose orders of removal are on review. These cases hold that it is "constitutionally doubtful" that the detention statutes permit lengthy periods of custody pending the outcome of legal challenges. Under the

---

[2] Petitioner filed a habeas corpus petition in Owino v. Gonzales, Case No. 06CV2149-BEN (CAB) (S.D. Cal.), challenging his removal order. Petitioner later moved to dismiss the petition, and the district court dismissed with prejudice for lack of jurisdiction under the REAL ID Act, finding "it is evidence that Petitioner sought this Court's review of the decision of the Board of Immigration Appeals." Id., Order Dismissing the Case (S.D. Cal. Nov. 7, 2007). Therefore, petitioner's one prior habeas action did not seek release from custody and did not rely on any of the arguments and authorities adduced in this petition.

authority of Tijani and Nadarajah, petitioner is entitled to release on order of supervision pending resolution of his appeals.

Two federal statutes authorize civil detention of aliens prior to final removal orders. Aliens may be detained or released at the discretion of the Attorney General under 8 U.S.C. § 1226(a). However, aliens who are subject to removal due to certain types of criminal convictions, such as aggravated felonies or crimes of moral turpitude, are detained under so-called mandatory detention provisions in 8 U.S.C. § 1226(c). Once an order of removal is final, however, continued detention is governed by 8 U.S.C. § 1231 and regulations.

If detainees with final orders are not removed within the 90-day statutory period, the Attorney General can release them under appropriate conditions of supervision, including regular appearances before an immigration officer and travel restrictions, among other requirements. See Ma v. Ashcroft, 257 F.3d 1095, 1104 (9th Cir. 2002); see also 8 U.S.C. § 1231(a)(3) (listing the conditions of supervision for deportable or removable aliens released from immigration custody at the expiration of the ninety-day removal period). The Attorney General may detain a deportable or inadmissible alien beyond the removal period only when he determines that the individual would "be a risk to the community or unlikely to comply with the order of removal" if released from immigration custody. 8 U.S.C. § 1231(a)(6).

In Zadvydas, however, the Supreme Court held that due process constraints on this civil detention authority permit only a period of custody that is reasonably necessary to bring about an alien's removal from the United States, and "does not permit indefinite detention." 533 U.S. at 689. Thus, federal officials **must** release a deportable alien from custody under appropriate conditions of supervision when no "significant likelihood of removal [exists] in the reasonably foreseeable future." Id.; see also Martinez, 543 U.S. at 386-87 (Zadvydas principles applicable equally to class of inadmissible aliens).

In Zadvydas, Kim, and Martinez, the Supreme Court repeatedly recognized that unreasonable, indefinite, civil detention raises serious due process problems. It construed the immigration detention statutes

consistently with the Fifth Amendment as permitting detention only during a period reasonably necessary to accomplish removal. See Zadvydas, 533 U.S. at 690; Kim, 538 U.S. at 513; Martinez, 543 U.S. at 386; see also Ly v. Hansen, 351 F.3d 263, 268 (6th Cir. 2003) (immigration detention should last only "for a time reasonably required to complete removal proceedings in a timely manner"). In short, a detention which may be reasonably related to a government purpose at the outset may no longer comply with due process requirements once it becomes unreasonably prolonged. See Zadvydas, 533 U.S. at 699 ("Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute. See 1 E. Coke, Institutes *70b ('*Cessante ratione legis cessat ipse lex*') (the rationale of a legal rule no longer being applicable, that rule itself no longer applies)."); Kim, 538 U.S. at 532 (Kennedy, J., concurring) ("If the Government cannot satisfy this minimal, threshold burden [of removability], then the permissibility of continued detention pending deportation proceedings turns solely upon the alien's ability to satisfy the ordinary bond procedures–namely, whether if released the alien would pose a risk of flight or a danger to the community."); Martinez, 543 U.S. at 385 ("In Zadvydas, it was the statute's text read in light of its purpose, not some implicit statutory command to avoid approaching constitutional limits, which produced the rule that the Secretary may detain aliens only for the period reasonably necessary to bring about their removal.").

The Ninth Circuit in Tijani and Nadarajah has applied the reasoning of these Supreme Court cases to the circumstances of detainees whose orders of removal are still subject to active legal challenges, that is, those detained under 8 U.S.C. § 1226 instead of § 1231. Consistent with the trend seen in Martinez to bring all classes of indefinitely detained aliens under the due process protections recognized in Zadvydas, Tijani and Nadarajah provide relief to detainees in petitioner's circumstances who are exposed to prolonged civil detention while their appeals are processed. See also Martinez v. Gonzales, 504 F. Supp. 2d 887 (C.D. Cal. 2007) (granting habeas corpus on basis of Tijani and Nadarajah).

In Tijani, the Court of Appeals reviewed a § 2241 habeas petition by a deportee who had been held in custody for 32 months awaiting the outcome of his appeals. Tijani held it was "constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal." 430 F.3d at 1242. Distinguishing Demore v. Kim, because Tijani did not concede he was deportable, the Court ordered his release, unless he was provided with a bail hearing and found unsuitable for release under the usual factors of risk of flight or danger to the community. See id.; see Kim, 538 U.S. at 522-23. Moreover, Kim was grounded on the Supreme Court's assumption that the period of detention would be "brief," only that "necessary for his removal proceedings," which the Supreme Court estimated as roughly six weeks in duration on average, or five months if further review is sought. See id.; see Kim, 538 U.S. at 522-23, 530. As Tijani's detention while awaiting outcome of his appeals far exceeded these estimates of the constitutionally permitted "brief period" of detention, he was entitled to release under the Zadvydas principles. See id. Thus, Tijani was entitled to release on habeas corpus unless the government proved at a hearing before an immigration judge that the petitioner was a flight risk or danger to the community. See id.[3]

In his concurring opinion, Judge Tashima expanded on the decision in order to provide guidance to the district courts. Judge Tashima saw the heart of the case to be a problematic administrative decision, In re Joseph, 22 I. & N. Dec. 799 (BIA 1999), which erroneously treated 8 U.S.C. § 1226(c) as permitting indefinite detention. See id. at 1243-44 (Tashima, J., concurring). Rather, Zadvydas made it clear that "[w]hen such a fundamental right [as personal liberty] is at stake, the Supreme Court has insisted on heightened procedural protections to guard against the erroneous deprivation of that right." Id. at 1244. The natural limitation on authority to detain, in Judge Tashima's view, is "[o]nly those immigrants who could not raise a 'substantial'

---

[3]However, in so proving, it is important that the assessment be based on the *current* circumstances relating to the detainee and not simply on past criminal convictions. See Lawson v. Gerlinski, 332 F. Supp.2d 735, 745 (M.D. Pa. 2004) (" 'To presume dangerousness to the community and risk of flight based solely on [an alien's] past record does not satisfy due process.' ") (quoting Ngo v. INS, 192 F.3d 390, 398-99 (3d Cir. 1999)).

argument against their removability should be subject to mandatory detention." Id. at 1247. Such a standard "strikes the best balance between the alien's liberty interest and the government's interest in regulating immigration." Id. Because Tijani had a potentially meritorious claim that his conviction was not a categorical crime of moral turpitude, he made a showing of a "substantial argument" which would warrant release on appeal. See id. at 1247-48.

Judge Tashima observed the perverse, penalizing effect of detention for those who have the best reasons to stay and fight: "By subjecting immigrants who, like Tijani, raise difficult questions of law in their removal proceedings to detention while those proceedings are conducted, the Joseph standard forces those immigrants to endure precisely what Tijani has endured: detention that lasts for a prolonged period of months or years." Id. at 1246 n.3. Judge Tashima concluded that liberty is one of the most fundamental rights protected by the Constitution, and the Supreme Court has indicated time and again that the individual should not carry the burden of protecting this fundamental right. See id. at 1245-46. Moreover, he put into question the continued viability of Joseph, which was decided prior to the Supreme Court's holding in Zadvydas. See id. at 1246; see also Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (lower courts are not bound by prior precedent that has been seriously undermined by intervening Supreme Court authority).

In Nadarajah, the Ninth Circuit considered an indefinite detainee held under suspicion of terrorist affiliation. Nadarajah challenged his detention and was pursuing a claim for asylum, but the government relied on the silence of the asylum detention statute to detain Nadarajah while this litigation proceeded. See 443 F.3d at 1076-78. However, the Court held that the asylum detention statute was equally subject to the strictures of Zadvydas. See id. at 1082. Moreover, the Court held the principles of Fed. R. App. Proc. 23(b), allowing release on bail pending appeal, apply to such immigration detentions. Id. at 1083. The usual standards operate in such cases: (1) probability of success on merits and irreparable harm; or (2) serious legal question and a balance of the hardships. Id. Moreover, the showing of probable success correspondingly

lessens as the length of detention increases. Id. at 1083-84. In Nadarajah, the Court found the 52 months of detention were a great hardship that accordingly reduced the required showing of likelihood of success. Id.

Petitioner's case is factually similar to Tijani and Nadarajah, and therefore he too is entitled to consideration for release. Like Tijani, petitioner can raise his argument for release through the vehicle of a § 2241 petition, and he also can point to substantial arguments regarding his deportation proceeding. His petition for review in the Ninth Circuit argues that the immigration judge at the removal hearing erred in holding petitioner was ineligible for relief in the form of withholding under the Convention Against Torture. Petitioner presented evidence of his official maltreatment by Kenyan officials and his abiding fear that if he were returned there, the persecution would re-commence. However, the IJ made an adverse credibility finding on the erroneous ruling that petitioner's account lacked corroboration. The IJ abused his discretion in not allowing petitioner's brother to testify telephonically from Sweden in support of the CAT claim. In the appeal before the BIA , petitioner submitted supporting documentation that he was in police custody without charge at the time of his physical abuse and that a warrant remains outstanding for his arrest. However, the BIA erred in failing to consider these supporting documents. His claims would counts as a "substantial question" under the Tashima analysis in Tijani. Moreover, as Judge Tashima observed, the detainee need not show certainty of outcome to gain release, just that "a closer look is surely required." Tijani, 430 F.3d at 1248 (Tashima, J., concurring).

Also, as in Nadarajah, petitioner here can demonstrate a basis for release by comparison with the equitable factors in Fed. R. App. P. 23(b). He raises substantive legal and factual questions. His continued loss of personal liberty in itself constitutes irreparable harm. As for the balance of hardships, the Court in Nadarajah found that 52 months' detention was a very burdensome hardship which correspondingly lessened the required showing of likely success on appeal, and the 32 months of detention in Tijani was deemed excessive, petitioner here has been in respondents' custody for **25 months**. His burden of probable success,

too, must be significantly lessened.

Balancing the factors identified in case law for release of detainees while legal challenges are pending, petitioner is entitled to release as were the petitioners in Tijani and Nadarajah. In addition to the severe harm flowing generally from a continued deprivation of personal liberty, his ability to pursue his meritorious appeal and cooperate with counsel is seriously impaired by continued detention.

As Chief Judge Vanaskie observed in Lawson, 332 F. Supp. 2d at 745:

> The price for securing a stay of removal should not be prolonged incarceration. "Freedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.' " Id. The fact that the alien has procured a stay of removal does not undermine the due process bedrock principle that there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the alien litigates his claims.

Consonant with these principles, this Court and other district courts have granted petitioners relief in cases which have raised identical claims under Tijani and Nadarajah, recognizing that indefinite detention pending substantive legal challenges violates due process. See Martinez, 504 F. Supp. 2d at 900-01; Malcalma v. Chertoff, No. 06CV2623-WQH (AJB), 2007 WL 1516744 (S.D. Cal. Sept. 26, 2007); Martinez-Herrera v. Crawford, No. CV07-0267-PHX-NVW-DKD, 2007 WL 2023469 (D.Ariz. June 20, 2007); Ali v. Crawford, No. CV06-01149-PHX-EHC; (D.Ariz. June 8, 2007); Soeoth v. Gonzales, No. 06CV7451-TJH (MLG) (C.D. Cal. Jan. 5, 2007). Copies of the unpublished orders granting relief in these cases are attached hereto in the Appendix.

## V.

## REQUESTED RELIEF

The petitioner requests that this Court order the respondents to release him from custody under the

conditions of supervision set forth in 8 U.S.C. §1231(a)(3). Alternatively, the Court should order a release hearing to evaluate petitioner's eligibility for supervision under appropriate conditions and which the respondents must bear the burden of proving by clear and convincing evidence that petitioner is not eligible for release. See Tijani, 430 F.3d at 1242, 1245-46 (Tashima, J., concurring).

## VI.

## VERIFICATION

I, Sylvester Owino, hereby verify that the facts contained in the instant petition are true and correct

Respectfully submitted,

Dated: 11/29/07

[signature]

**SYLVESTER OWINO**
Petitioner

# Appendix

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL GUEVARRA MACALMA,<br>Petitioner,<br>vs.<br>MICHAEL CHERTOFF, Secretary of Homeland Security, et.al.,<br>Respondents. | CASE NO. 06CV2623 WQH (AJB)<br>ORDER |

Hayes, Judge:

The matter before the Court is the Motion to Order Release of Petitioner Paul Guevarra Macalma under an Order of Supervision. (Doc. # 35.)

## BACKGROUND

On November 20, 2003, the Department of Homeland Security took custody of Petitioner and placed him in removal proceedings.

On March 10, 2004, the Immigration Judge found that Petitioner was not a citizen and ordered him removed to the Philippines. Petitioner filed an appeal to the Board of Immigration Appeals.

On October 22, 2004, the Board of Immigration Appeals upheld the decision of the Immigration Judge that Petitioner had not derived citizenship through his father under former section 321 of the Immigration and Naturalization Act, 8 U.S.C. § 1432(a).

On November 16, 2004, Petitioner filed a Petition for Review in the Court of Appeals for the Ninth Circuit along with a motion to stay deportation pending resolution of the appeal. *Macalma v. Gonzales*, No. 04-75821.

On June 14, 2005, Respondents filed a statement of non-opposition to the motion for stay of removal.

On August 5, 2005, the Court of Appeals filed an order which appears in the docket in part as follows: "respondent has filed a statement of non-opp to mtn for stay of removal; temporary stay of removal continues in effect until the issuance of the mdt or further order of the ct." (Docket # 6, Exhibit 12 at 5.)

On February 27, 2006, Petitioner filed his opening brief in the Court of Appeals along with a motion for appointment of counsel.

On March 21, 2006, the Court of Appeals denied the motion for appointment of counsel and ordered Respondents to file an answering brief within 30 days.

On June 5, 2006, Respondents filed a motion to remand to the Board of Immigration Appeals for reconsideration of the determination that Petitioner had not derived citizenship through his father under former section 321 of the Immigration and Naturalization Act, 8 U.S.C. § 1432(a). Respondents requested that the Court of Appeals remand the case to the Board "so that it can review this case in light of the Court's decision in *Minaysan [v. Gonzales*, 401 F.3d 1069 (9th Cir. 2005)]." (Doc. #6, Exhibit 16 at 2.)

On August 23, 2006, the Court of Appeals entered an order which appears on the docket in part as follows: "unless an opp to the mtn [to remand] is filed within 14 days of this order, the mtn will be granted." (Doc. # 6, Exhibit 14 at 7.)

On September 22, 2006, the Court of Appeals granted Respondents' "unopposed" motion to remand and stated "the parties are deemed to have agreed that the court's remand order shall stay petitioner's removal." (Doc. # 6, Exhibit 14 at 7.)

On November 28, 2006, Petitioner filed the Petition for Writ of Habeas Corpus. (Doc. # 1.) Petitioner asserted that he is entitled to release from the custody of Respondents under appropriate conditions of supervision. Petitioner argued that his prolonged detention is contrary to immigration laws and the United States Constitution. Petitioner asserted that 1) there is no statute which authorizes his detention of more than three years, 2) the immigration statutes and due process required that a hearing should be held to determine whether his continued detention is justified, and 3) the sheer length of his detention violates the Due Process Clause of the United States Constitution. Petitioner asserted that his detention under

8 U.S.C. §1226(c)(1)(C) was not authorized at any time because he was sentenced on his 2000 conviction for receipt of stolen property to three years of probation and was not sentenced to at least one year imprisonment as required pursuant to Section 1226(c)(1)(C). Even if Section 1226(c) applied, Petitioner asserted that his case is not distinguishable in any meaningful way from the case of *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) in which the Court of Appeals concluded that detention of two years and eight months was not within the authority conferred by Section 1226(c).

On March 5, 2007, Respondents filed a Return in Opposition to the Petition for Writ of Habeas Corpus. (Doc. # 6.)

On May 22, 2007, this Court filed an order stating in part:

> Petitioner is held under the detention provisions of 8 U.S.C. § 1226(c)(1)(C) which provides that "the Attorney General shall take into custody an alien who - is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year." The documents submitted in this case do not establish that Petitioner has been "sentenced to a term of imprisonment of at least 1 year." 8 U.S.C. § 1226(c)(1)(C). Respondent has not established that 8 U.S.C. § 1226(c)(1)(C) authorizes the mandatory detention of the Petitioner. Based upon the record in this case, Petitioner is entitled to a release hearing pursuant to the provisions of 8 U.S.C. § 1226(a).
> IT IS HEREBY ORDERED that the Petition for Habeas Corpus is granted as follows: Respondents shall provide a release hearing to Petitioner pursuant to the provisions of 8 U.S.C. § 1226(a) within 10 days of the date of this order. The Court appoints the Federal Defender as counsel for Petitioner for the sole purpose of representation in this habeas action. Respondents shall file a status report in this case within 20 days of the date of this order. This case will remain open pending further order of this Court.

(Doc. #19 at 6.)

On May 29, 2007, the Board of Immigration Appeals granted Petitioner's motion to reopen his immigration case and remanded proceedings to the immigration court. (Doc. # 22, Exhibits 70-71.)

On May 29, 2007, the Immigration Judge held a release hearing. The Immigration Judge informed counsel for the Petitioner that "the District Court appeared to be unaware that the basis for the Court's mandatory custody finding of January 9, 2004 was premised upon the representations . . . that [Petitioner] was convicted for possession of drug paraphernalia in 2003." (Doc. # 27, Exhibit at 5.) The release hearing was continued to June 6, 2007 to allow

briefing by the parties.

At the June 6, 2007 hearing, the Immigration Judge reviewed the following facts :1) that on January 9, 2004 a determination was made at a bond hearing for Petitioner that his drug related conviction [January 28, 2003 in San Diego Superior Court for Possession of Drug Paraphernalia in violation of California Health and Safety Code Section 11364] qualified as a deportable offense relating to a controlled substance resulting in the mandatory custody provisions of 8 U.S.C. § 1226(c)(1)(B); 2) that on January 23, 2004, the Immigration Judge found that Petitioner qualified for "automatic citizenship" pursuant to the provisions of 8 U.S.C. § 1432 terminating the removal proceedings; and 3) that on February 6, 2004, the Immigration Judge vacated the order terminating the removal proceedings finding that Petitioner failed to qualify for citizenship resulting in the order of removal. The Immigration Judge advised the parties that Petitioner's "September 29, 2000 conviction for receiving stolen property was not the basis for a finding of mandatory custody pursuant to Section 236(c) of the Act; 8 U.S.C. 1226(c)." The Immigration Judge explained that it was [Petitioner's] "2003 conviction for possession of drug paraphernalia that triggered the mandatory custody provisions of Section 236(c)(1)(B) of the Act; 8 U.S.C. 1226(c)(1)(B)." (Doc. # 27, Exhibit at 5.) The Immigration Judge concluded that "the mandatory custody order of January 9, 2004 was legally sufficient when entered and was sufficient to hold [Petitioner] during the pendency of removal proceedings. . . . however, in light of [Petitioner's] prolonged period of detention in excess of three years and seven months, valid issues relevant to the continuing applicability of the mandatory custody provisions . . . have been raised." (*Id.* at 6.) The Immigration Judge reviewed the court decisions in *Demore v. Kim*, 538 U.S. 510 ( 2003) and *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005) and entered the following findings and conclusions:

> [Petitioner] has been incarcerated for more than 3 years and 7 months. The delays in [Petitioner's] case have not been caused by [Petitioner's] efforts to engage in tactics that are intended to stall a determination of issues relevant to his removal from the United States. Without addressing this Court's assessment of [Petitioner's] success in challenging his removal, [Petitioner] has raised substantial issues against his removal that have been adjudicated by this Court and the Board of Immigration Appeals. A final determination of [Petitioner's] removal case has been delayed at no fault of [Petitioner]. A number of jurisdictional errors were triggered when the Board failed to enter DHS's February 20, 2004 appeal into its electronic docketing system. It appears that

> DHS then failed to withdraw that appeal once the Court had granted DHS counsel's motion to reconsider on March 10, 2004.
>
> [Petitioner's] case has been returned to this Court for the entry of a new decision on the merits of [Petitioner's] derivative claim. That determination will include evidence [Petitioner] has produced for the first time on appeal as well as an analysis of [Petitioner's] claim in light of the Ninth Circuit's holding in *Minasyan v. Gonzales*, 401 F.3d 1069 (9th Cir. 2005). Assuming the Court expects to complete [Petitioner's] removal proceedings within 90 days, an adverse decision on [Petitioner's] derivative citizenship claim preserves [Petitioner's] right to administrative and judicial review of any removal order. Were [Petitioner] to pursue all legal remedies, his case would not be completed within the next year.
>
> Under these circumstances, the Court finds that [Petitioner's] continued detention is unjustified and unreasonable. Due Process required that [Petitioner] be provided this custody review hearing where [Petitioner] is entitled to a determination regarding the amenability for release. For purposes of making such a determination DHS is required to provide evidence that [Petitioner] is a flight risk or a danger to the community.

(Doc. #27 Exhibit at 8.) The Immigration Judge concluded that Petitioner is not a flight risk and that Petitioner's crimes "are not so serious that the Court can find that [he] is a danger to the community and will continue to commit crimes if released on bond." The Immigration Judge "ORDERED that [Petitioner] is hereby released from the custody of the Department of Homeland Security upon the posting of a $7,000 bond." (*Id.* at 9.)

Respondent filed an appeal from the June 6, 2007 decision of the Immigration Judge to the Bureau of Immigration Appeals in which Respondents assert that Petitioner is subject to mandatory detention and that the Immigration Judge relied upon *Tijani* in error. (Doc. # 24 Exhibit A.)

Counsel for Petitioner states as follows in her declaration:

> Following the immigration judge's order setting a $7,000 cash bond, Mr. Macalma's father, Benjamin Macalma attempted to obtain the bond amount. I am informed by Benjamin Macalma that he is currently working as a security guard and has two young children. Benjamin Macalma has informed me that he cannot make the $7,000 cash bond.
>
> Soon after I was informed by Mr. Macalma's father than (sic) he could not make the $7,000 cash bond, I contacted the immigration court to get a bond redetermination hearing so that the bond amount could be lowered. The immigration judge, however, indicated – both over the telephone and during a removal hearing for Mr. Macalma – that she does not have jurisdiction over the bond issue because the issue has been taken up to the BIA by the DHS. On Mr. Macalma's behalf, I subsequently filed a Motion for a Bond Redetermination with the immigration court providing legal support regarding the court's jurisdiction over bond predeterminations. The immigration judge has not ruled

> on Mr. Macalma's motion.
>
> Although recognizing that DHS challenges the application of *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005), I previously contacted the DHS counsel, Karri Harlin, to determine whether she would agree to a lower bond amount. Ms. Harlin indicated that the government would not agree to a lower amount because of DHS's appeal to the BIA.
>
> Following the August 21, 2007 status hearing before this Court, upon recommendation of Mr. Samuel Bettwy, the Assistant United States Attorney assigned to this matter, I wrote to Mr. Macalma's deportation officer, Stephanie Valdez, requesting that she consider a lower bond amount. ...
>
> On September 5, 2007, Mr. Bettwy informed me that the deportation officer has denied the request.

(Doc. # 35-3 at 2-3.)

On September 5, 2007, Petitioner filed the motion for release upon appropriate conditions of supervision pending before this Court

On September 14, 2007, Respondent filed a Response to Petitioner's motion.

On September 17, 2007, Petitioner filed a Reply to Respondent's Response.

## CONTENTIONS OF THE PARTIES

Petitioner contends that his continued detention without bond redetermination amounts to a denial of the habeas relief previously granted by this Court on May 22, 2007. Petitioner asserts that this Court should now issue an order releasing him under appropriate conditions of supervision without bond. Petitioner contends that he has filed a motion for bond redetermination with the Immigration Judge and that he has specifically addressed the issue of jurisdiction with the Immigration Judge. Petitioner contends that the Immigration Judge does not lose jurisdiction over the redetermination of the bond amount even though there is an appeal pending to challenge the granting of bond. Petitioner contends that he should not be forced to wait an indefinite amount of time for the Immigration Judge to make further determinations regarding his current detention. Petitioner contends that this Court has continuing jurisdiction over his claim that due process requires his release under reasonable conditions pending resolution of his immigration proceedings.

Respondent contends that this District Court does not have jurisdiction pursuant to 28 U.S.C. § 2241 to stand in the place of the Immigration Judge. Respondent contends that habeas

jurisdiction is limited to persons in custody in violation of the Constitution or laws of the United States and does not extend to discretionary decisions made by the executive branch and that Petitioner must exhaust his available administrative remedies by appealing to the Bureau of Immigration Appeals.

**CONCLUSION**

The Order of this Court filed on May 22, 2007 granted Petitioner's writ of habeas corpus and required Respondents to provide a release hearing to Petitioner. Pursuant to the Order of this Court, a release hearing was held before an Immigration Judge. At the release hearing, the Immigration Judge concluded that ". . . in light of [Petitioner's] prolonged detention in excess of three years and seven months, valid issues relevant to the continuing applicability of the mandatory custody provisions . . . have been raised." (Doc. #27 Exhibit at 6.) The Immigration Judge relying upon *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005)[1] found that Petitioner's "continued detention is unjustified and unreasonable." (Doc. #27 Exhibit at 8.) The Immigration Judge found that Petitioner was not a flight risk or a danger to the community and ordered Petitioner's release upon the posting of $7,000 bond. Petitioner cannot pay the bond and Petitioner's motion for redetermination of the bond amount remains pending before the Immigration Judge.[2]

In *Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824 (9th Cir. 2002), the Court of Appeals concluded that the Petitioner was not entitled to challenge the manner in which the BIA exercised its discretion in denying Petitioner's request for a waiver of deportation under INA Section 212(c) in a petition for habeas corpus under 28 U.S.C. Section 2241. The Court of Appeals stated "[w]e hold that 28 U.S.C. § 2241 does not allow us, in the absence of constitutional or statutory error, to second-guess the manner in which the INS chooses to exercise the discretion given it by statute." *Id.* at 827. The Court explained that "§2241 does

---

[1]After the remand in *Tijani*, this Court released Tijani without a bond under supervised release pursuant to the stipulation of the Respondent.

[2] According to the applicable regulations, Petitioner has administrative remedies he may pursue if he is dissatisfied with the "custody determination [by the DHS] . . . including the setting of a bond" and/or the "the terms of his release." 8 C.F.R. § 1236.1(d).

not say that habeas is available to challenge purely discretionary (yet arguably unwise) decisions made by the executive branch that do not involve violations of the Constitution or federal law." *Id.* at 828.

In this case, Petitioner remains in custody and continues to challenge the legality of his confinement under 28 U.S.C. Section 2241. Petitioner continues to assert that his lengthy detention is not authorized under any statute and violates the Due Process Clause of the United States Constitution. At the release hearing, the Immigration Judge agreed with the Petitioner that his continued detention is unjustified and unreasonable. Petitioner's claim that he should be released in this habeas action continues to be based upon statutory and constitutional error and does not challenge a discretionary decision to hold him in custody. "28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution, or laws, or treaties of the United States.'" *Magana-Pizano v. INS*, 200 F.3d 603, 609 (9th Cir. 1999) (quoting 28 U.S.C. Section 2241.)

The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available . . . administrative remedies before seeking relief under § 2241." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001) (citing *U.S. v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). However, "exhaustion is not a jurisdictional prerequisite of § 2241." *Rivera v. Ashcroft*, 394 F.3d 1129, 1139 (9th Cir. 2005) (internal quotations omitted). In *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990)), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, --- U.S. ----, 126 S. Ct. 2422 (2006), the Court of Appeals held that a petitioner's failure to exhaust his administrative remedies before pursuing habeas review "does not divest us of jurisdiction," and "[w]here exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the administrative remedies before proceeding in court." *Id.* In this case, Respondent has had an ample opportunity to act upon Petitioner's motion for bond redetermination and Petitioner remains in custody.[3] The record before the Court shows that

---

[3] Petitioner's motion for redetermination of bond amount was filed with the Immigration Court on August 22, 2007.

Petitioner has pursued his available administrative remedies to contest the bond determination by the Immigration Judge. The writ of habeas corpus is intended to be a "swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400, 83 S.Ct. 822, 828 (1963); *see Young v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Jones v. Shell,* 572 F.2d 1278, 1280 (8th Cir. 1978)) ("The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if . . . trial courts do not act within a reasonable time.").

After three years and ten months in custody, Petitioner's immigration case remains pending before the Immigration Judge in the administrative proceedings. The resolution of Petitioner's immigration proceedings is not imminent. Because Petitioner is unable to meet the cash bond, Petitioner continues to face a lengthy and indefinite detention pending the resolution of his immigration proceedings.

On June 6, 2007, the Immigration Judge correctly found that Petitioner's continued detention was "unjustified and unreasonable" in light of the holding in *Tijani* that "the authority of the Attorney General to detain pursuant to 1226(c) applies to the 'expedited' removal of criminal aliens." Doc. 27-2 at 8. Petitioner in this case has been incarcerated for three years and ten months. Four months ago, the Immigration Judge found that Petitioner was not a flight risk or a danger to the community. The Court finds that under the facts of this case, Petitioner's continued detention is not authorized by statute. *See Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005).

IT IS HEREBY ORDERED that Petitioner's Motion for Release under an Order of Supervision (Doc. #35) is granted. The Immigration Judge shall set appropriate conditions of supervision forthwith.

DATED: September 26, 2007

William Q. Hayes

**WILLIAM Q. HAYES**
United States District Judge

**C**
Martinez-Herrera v. Crawford
D.Ariz.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
Eduardo MARTINEZ-HERRERA, Petitioner,
v.
Phillip CRAWFORD, ICE Field Office Director, Respondent.
**No. CV07 0267PHX NVW DKD.**

June 20, 2007.

ORDER

WAKE, J.
***1** Pending before the court is the Supplemental Report and Recommendation ("SuppR & R") of Magistrate Judge Duncan (Doc. # 12) regarding petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. # 1). The SuppR & R recommends that the Petition be granted. The Magistrate Judge advised the parties that they had ten days to file objections to the SuppR & R. (SuppR & R at 5-6 (citing 28 U.S.C. § 636(b)). No objections were filed.

Because the parties did not file objections, the court need not review any of the Magistrate Judge's determinations on dispositive matters. *See*28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003); *Thomas v. Arn,* 474 U.S. 140, 149 (1985) ( "[ Section 636(b)(1) ] does not ... require any review at all ... of any issue that is not the subject of an objection."). The absence of a timely objection also means that error may not be assigned on appeal to any defect in the rulings of the Magistrate Judge on any non-dispositive matters.Fed.R.Civ.P. 72(a) (" Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."); *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1174 (9th Cir.1996); *Philipps v. GMC,* 289 F.3d 1117, 1120-21 (9th Cir.2002).

In light of the absence of an objection, and holding the Respondent to his forfeiture, the court will accept the Supplemental R & R and grant the Petition. *See*28 U.S.C. § 636(b)(1) (stating that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate").

IT IS THEREFORE ORDERED that Supplemental Report and Recommendation of the Magistrate Judge (Doc. # 12) is accepted.

IT IS FURTHER ORDERED that petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. # 1) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment granting the petition and ordering that Respondent release Petitioner Martinez-Herrera from custody under an order of supervision, or in the alternative that the Government, within 60 days of the date of this order, provide a hearing to Petitioner Martinez-Herrera before an immigration judge with the power to grant him bail unless the Government establishes that he is a flight risk or will be a danger to the community.

The Clerk shall terminate this action.

DATED this 11th day of July, 2007.

SUPPLEMENTAL REPORT AND RECOMMENDATION

DUNCAN, Magistrate J.
TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

On February 6, 2007, Eduardo Martinez-Herrera filed a petition for writ of habeas corpus pursuant to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C. § 2241, contending that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) and is entitled to a bond redetermination hearing before an immigration judge, because he was taken into custody by the Department of Homeland Security more than five years after he was released from state custody. The Government initially argued that because Martinez-Herrera is now in the 90-day immediate removal period during which his detention is mandated by statute, he is not entitled to habeas relief. On April 26, 2007, the undersigned Magistrate Judge recommended that Martinez-Herrera's petition be denied and dismissed with prejudice. *See* Doc. # 5.

***2** In his Objections to the Report and Recommendation and Motion for Reconsideration, Martinez-Herrera clarified that there was no final order of removal, and that his appeal was still pending before the Board of Immigration Appeals. *See* Doc. # 6. The Government admitted the error, and the District Court referred the case for a further Report and Recommendation. The Court recommends that the petition be granted.

BACKGROUND

Martinez-Herrera is a native and citizen of Guatemala, who entered the United States in 1988 without being admitted or paroled by an immigration officer, and without the permission of the Attorney General (Doc. # 4, Exh 1). On October 25, 1999, he was convicted in Utah County, Utah of Theft by Receiving Stolen Property, Attempted Purchase/Possession of a Dangerous Weapon, and Use/Possession of Drug Paraphernalia. He was sentenced to one year in jail with credit for time served, and was released from custody in 2000.

Over five years after his release from state custody, [FN1] on September 28, 2005, the Department of Homeland Security issued a Notice to Appear, charging Martinez-Herrera with removability pursuant to § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General; § 1182(a)(2)(A)(i)(I), as an alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime; and § 1182(a)(2)(A)(i)(II), as an alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a violation of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (*Id.*, Exh 3).[FN2]

FN1. Martinez-Herrera argues that because his "release" from custody for the crime subjecting him to mandatory detention occurred five years ago, § 1226(c) should not apply. Although this is a strong argument, *see Quezada-Bucio v. Ridge,* 317 F.Supp.2d 1221 (W.D.Wash.2004), the Court recommends relief on other grounds.

FN2. During his removal proceedings, DHS issued a bond determination of "No Bond" (*Id.,* Exh 11). Upon Martinez-Herrera's October 6, 2005 motion for a change in the custody status brought pursuant to 8 C.F.R. § 1236.1(d)(1), the immigration judge determined that he lacked jurisdiction to redetermine custody status (*Id.,* Exh 12). Petitioner moved for bond re-determination on November 13, 2006; the immigration judge again determined that he had no jurisdiction (*Id* ., Exh 13). On appeal, the BIA agreed, citing *Matter of Rojas,* 23 I & N Dec. 117 (BIA 2001). In light of the Court's recommendation, it need not address this issue.

On November 8, 2005, Martinez-Herrera admitted the allegations, and indicated a desire to apply for adjustment of status, asylum, withholding of removal, and protection under the Convention Against Torture (*Id.*, Exh 4, 11/8/05 R.T. at 22-25). On January 26, 2006, the immigration judge determined that Martinez-Herrera was ineligible for a section 212(h) waiver of inadmissibility, or for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

voluntary departure, and denied his applications for adjustment of status, asylum, withholding of removal, and protection under the Convention Against Torture, and ordered him removed to Guatemala (*Id.*, Exh 5 at 5, 7-14).

On appeal, Martinez-Herrera moved to remand to the immigration judge to allow him to consider the application for adjustment of status, on the basis that the state court had amended his controlled substance conviction from "Use/Possession of Drug Paraphernalia" to "Solicitation to Use or Possess Drug Paraphernalia"(*Id.*, Exh 6). On June 12, 2006, the Bureau of Immigration Appeals granted his motion (*Id.*, Exh 7). On September 13, 2006, an immigration judge found that Martinez-Herrera qualified for a section 212(h) waiver and granted his application for adjustment of status (*Id.*, Exh 8). DHS appealed, and the BIA sustained the appeal ( *Id.*, Exh 9).

***3** A review of the Ninth Circuit Docket indicates that on January 23, 2007, Martinez-Herrera filed a Petition for Review and a Motion for Stay; on February 2, 2007, the Ninth Circuit issued a stay of removal. On February 7, 2007, the immigration judge entered an order of removal (*Id.*, Exh 10).[FN3] Martinez-Herrera appealed the order of removal on March 5, 2007; briefing was due by April 12, 2007 (Doc. # 6). The appeal is still pending before the BIA.

FN3. On February 9, 2007, the BIA dismissed Martinez-Herrera's *bond* appeal (Doc. # 14). The Government erred in its initial response in characterizing this as a dismissal of the appeal of the removal order. Based upon that error, the Government contended that the removal period had begun, and that Martinez-Herrera was still within the statutorily authorized 90-day detention under 8 U.S.C. § 1231(a)(1)(B)(i). Relying on the Government's avowal, the Court recommended dismissal of his petition.

DISCUSSION

During the removal proceedings, beginning on September 28, 2005, when Martinez-Herrera was issued the Notice to Appear, and continuing today because of his appeal pending before the BIA, 8 U.S .C. § 1226(c) governs Martinez-Herrera's detention. Of the 21 months, 80% of the time was spent in detention during administrative proceedings. In *Kim v. Demore,* 538 U.S. 510 (2003), the Supreme Court held that mandatory detention of criminal aliens pursuant to 8 U.S.C. § 1226(c) was constitutional "for the brief period necessary for their removal proceedings."538 U.S. at 512. The alien's detention in *Kim* lasted six months.

In *Tijani v. Willis,* the Ninth Circuit held that "the authority conferred by § 1226 [applies] to expedited removal of criminal aliens."430 F.3d 1241. In *Tijani,* a period of 30 months, including both administrative and court proceedings, was held to be not expeditious. In *Tijani,* two-thirds of the time the alien had been detained was due to the length of the administrative proceedings.[FN4]However, the Ninth Circuit also considered important the fact that "the vast majority of Tijani's detention-over 22 of the nearly 30 months that have so far elapsed-has occurred while the BIA *and this Court* have considered his appeals."*Tijani,* 430 F.3d at 1246 (emphasis added).

FN4."[T]he IJ took almost seven months to issue his decision; the BIA took just short of an additional 13 months."430 F.3d at 1241, n.3 (Tashima, J., concurring).

In this case, 80% of Martinez-Herrera's detention16 months of the 21 months that have so far elapsed-has also occurred during the administrative proceedings (which are still ongoing with no definite termination point). A large portion of the time elapsed occurred as the result of "an *unreasonable* delay by the INS in pursuing and completing deportation proceedings."It is not the " expedited removal" required by *Tijani.*Instead, it has reached the point where it has "become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for other reasons."*Kim,* 538 U.S. at 532 (Kennedy, J., concurring).

Finally, this case is unlike *Kim,* where "the detention ... is of a much shorter duration," with "a definite termination point." 538 U.S. at 529. It more closely resembles the situation in *Zadvydas,* where the period of detention was "indefinite" and " potentially permanent." 533 U.S. at 690-91. The amount of time Martinez-Herrera has been detained for the administrative proceedings *is still ongoing,* given the recent remand to the BIA-longer than the proceedings in *Kim,* and even the time period in *Tijani,* with no "definite termination point." FN5

FN5. It is also noteworthy that Martinez-Herrera has been granted relief by one immigration judge in the form of a section 212 waiver of inadmissibility. *See Nadajarjah v. Gonzalez,* 443 F.3d 1069 (9th Cir.2006).

***4** IT IS THEREFORE RECOMMENDED that Eduardo Martinez-Herrera's petition for writ of habeas corpus be GRANTED (Doc. # 1).

IT IS FURTHER RECOMMENDED that the District Court order Martinez-Herrera's release from custody under an order of supervision, or in the alternative order the Government, within 60 days of the District Court's Order, to provide a hearing to Martinez-Herrera before an immigration judge with the power to grant him bail unless the Government establishes that he is a flight risk or will be a danger to the community.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,*28 U.S.C. § 636(b)(1); Rules 72, 6(a) , 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*Rule 72, Federal Rules of Civil Procedure.

D.Ariz.,2007.
Martinez-Herrera v. Crawford
Slip Copy, 2007 WL 2023469 (D.Ariz.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**C**
Ali v. Crawford
D.Ariz.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
Mohammed ALI, Petitioner,
v.
Phillip CRAWFORD, Field Office Director, ICE; Alberto Gonzales, Attorney General of the United States, Respondents.
**No. CV 06-01149-PHX-EHC.**

June 8, 2007.

EARL H. CARROLL, United States District Judge.
*1 Petitioner Mohammed Ali filed a Petition for Writ of Habeas Corpus, arguing that his detention for four years while his removal proceedings have been pending is unlawful. (Dkt.1). This matter was referred to Magistrate Judge Duncan for Report and Recommendation ("R & R"). Magistrate Judge Duncan issued a R & R in accordance with 28 U.S.C. § 636(b)(1)(B). (Dkt.12). The R & R recommends that the Court grant the Petition and that the Court either order Petitioner's release from custody under an order of supervision, or, in the alternative, order Respondents to provide a hearing to Petitioner within sixty (60) days of its Order before an Immigration Judge with the power to grant him bail unless Respondents establish that he is a flight risk or will be a danger to the community. (Dkt.12).

Respondents filed their Objections to the R & R. (Dkt.15). Petitioner filed a Declaration in response to Respondents' Objections to the Report and Recommendation. (Dkt.17). Petitioner filed a Response to Government's Objections together with a Declaration. (Dkts.18-19).

***Standard of Review***

A district court judge reviews a Report and Recommendation of a Magistrate Judge *de novo*. *See*28 U.S.C. § 636(b)(1)(C).

***Discussion***

The Court having reviewed the record *de novo,* including the Objections filed by the Respondents, adopts in full the Report and Recommendation of the Magistrate Judge and incorporates the same as part of this Order.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge is **ADOPTED** in full. (Dkt.12).

**IT IS FURTHER ORDERED** that the Respondents' Objections to the Report and Recommendation of the Magistrate Judge are **DENIED.**(Dkt.15).

**IT IS FURTHER ORDERED** that Respondents shall have **sixty (60) days** from the date this Order is filed to provide a hearing to Petitioner before an Immigration Judge with the power to grant him bail unless Respondents establish that Petitioner is a flight risk or will be a danger to the community.

**IT IS FURTHER ORDERED** that if Respondents fail to provide a hearing to Petitioner before an Immigration Judge within **sixty (60) days** of the date this Order is filed, Petitioner shall be released from custody under an order of supervision.

DAVID K DUNCAN, United States Magistrate Judge.
TO THE HONORABLE EARL H. CARROLL, UNITED STATES DISTRICT JUDGE:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Mohammad Ali filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 24, 2006, arguing that his detention for four years while his removal proceedings have been pending is unlawful. *See Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir.2005). The Court agrees and recommends that his petition be granted.

Ali is a native and citizen of Fiji, admitted into the United States on February 9, 1989 as a lawful permanent resident (Doc. # 11, Exh 1). On September 22, 1999, Ali was convicted in California Superior Court for Possession of a Controlled Substance, methamphetamine, in violation of section 11377(A) of the California Health and Safety Code, and for Vehicle Theft/Taking a Vehicle Without the Owner's Consent, in violation of section 10851(A) of the California Vehicle Code. Following a revocation of his probation, he was sentenced to 16 months and two years respectively (*Id.,* Exh 2).

***2** On February 13, 2003, the Department of Homeland Security (DHS) issued a Notice to Appear, charging Ali with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii) , alleging that at any time after admission he had been convicted of an aggravated felony as defined in section 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B) , relating to the illicit trafficking in a controlled substance and under section 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G), relating to a theft offense for which the term of imprisonment of at least 1 year was imposed (*Id.,* Exh 3). On March 17, 2003, Ali admitted the factual allegations *but contested the charges of removability*(*Id.,* Exh 4). The Immigration Judge designated Fiji as the country of removal; Ali requested withholding of removal and benefits under the Convention against Torture (*Id.,* Exh 4).

At the April 9, 2003 hearing, the Immigration Judge found both convictions to be particularly serious crimes, making Ali ineligible for withholding of removal. Because of his aggravated felony conviction, the Immigration Judge found that he was also not eligible for asylum. Finally, the Immigration Judge found that Ali had not established that it was more likely than not that he would be tortured if he returned to Fiji. Ali was ordered removed to Fiji; he reserved appeal (*Id.,* Exh 4, 5). On September 9, 2003, the Board of Immigration Appeals (BIA) dismissed his appeal ( *Id.,* Exh 7). On October 2, 2003, Ali filed a petition for review with the Ninth Circuit; on February 24, 2004, the Ninth Circuit dismissed his petition for review for lack of jurisdiction (*Id.,* Exh 8, 9).

On April 6, 2004, Ali filed a petition for writ of habeas corpus in the District Court. *See Ali v. Gonzales,* CIV 04-0690-PHX-EHC (DKD). In his petition, Ali argued that his California state felony conviction for possession of a controlled substance did not qualify as an aggravated felony, citing the Ninth Circuit's initial opinion, later withdrawn, in *Cazarez-Gutierrez v. Ashcroft,* 356 F.3d 1015 (9th Cir.2004). On July 20, 2005, the District Court ordered the case transferred to the Ninth Circuit Court of Appeals pursuant to section 106(c) of the REAL ID Act of 2005. On September 13, 2006, the Ninth Circuit granted the Government's motion to remand the petition for review to the BIA, in light of the intervening decisions in *Cazarez-Gutierrez v. Gonzales,* 382 F.3d 905 (9th Cir.2004) and *Penuliar v. Gonzales,* 435 F.3d 961 (9th Cir.2006). FN1

FN1. Although the Government has not provided the Court with the motion to remand, and the Ninth Circuit order filed by Ali does not reference the reason for remand, the Government noted the intervening decisions in its response. *See* Doc. # 11 at 8, fn 1.

The Court notes initially that because of the Ninth Circuit's most recent stay of removal, the removal period has not commenced, and therefore 8 U.S.C. § 1226(c), and not § 1231, governs Ali's current detention. Respondents argue that although the requirement is not jurisdictional, the Court should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

decline to review the habeas petition because Ali does not allege that he ever requested bond or a bond hearing. Ali does not remain in custody because he failed to request bond; he is detained pursuant to DHS's most recent custody review and denial of release. Under these circumstances, the Court declines to require proof of a request for bond or a bond hearing as a prerequisite to filing a petition pursuant to 28 U.S.C. § 2241.

***3** In addition, Respondents contend that Ali's detention during removal proceedings has been brief, and his current detention is lawful under *Demore v. Kim,* 538 U.S. 510 (2003), and *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005). They maintain further that the only reason Ali was detained on his first petition for review and in his first habeas proceeding (a period of almost one year) is because of his continued litigation, which has resulted in an extension of the removal period.

In *Kim,* where the alien had conceded deportability, "and hence, [was] subject to mandatory detention under § 1226(c),"538 U .S. at 523, the Supreme Court held that mandatory detention pursuant to § 1226(c) was constitutional "for the brief period necessary for [his] removal proceedings."538 U.S. at 512. Ali has never conceded deportability in this case. He makes the same argument in 2007 that he initially made four years earlier: his convictions do not constitute removable offenses or make him ineligible for withholding of removal.

The situation that Ali finds himself in is similar to the alien's situation in *Zadvydas v. Davis,* 533 U.S. 678 (2001), where "detention's goal is no longer practically attainable, [and] detention no longer bears a reasonable relation to the purpose for which the individual was committed."533 U.S. at 690. In a situation where the alien concedes deportability, " [s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."*Kim,* 538 U.S. at 527. Ali has never conceded deportability.

Finally, this case is unlike *Kim,* where "the detention ... is of a much shorter duration," with "a definite termination point." 538 U.S. at 529. It more closely resembles the situation in *Zadvydas,* where the period of detention was "indefinite" and " potentially permanent." 533 U.S. at 690-91. The amount of time Ali has been detained for the administrative proceedings *is still ongoing,* given the recent remand to the BIA-longer than the proceedings in *Kim,* and even the time period in *Tijani,* with no "definite termination point."

The reasons for detention in this case are also similar to those in *Tijani.*In *Tijani,* the alien's detention for almost two and one half years was " not the result of a criminal conviction; nor is it because he faces imminent removal ... [but] because the government *may* be able to prove he is subject to removal."430 F.3d at 1241 (Tashima, J, concurring) (emphasis in original). As Judge Tashima explains, "Tijani was convicted in California of offenses that have *never been found by a court or by the BIA to trigger mandatory detention* ... Today, nearly 30 months later, Tijani remains in mandatory detention while courts continue to sort out whether his offenses actually fall within the reach of the mandatory detention statute."430 F.3d at 1241. (emphasis added). In this case, Ali, like Tijani, has never *conceded* removability. The courts *and the administrative agencies* are "continu[ing] to sort out whether his offenses actually fall within the reach of the mandatory detention statute."

***4** In *Tijani,* two-thirds of the time he had been detained was due to the length of the administrative proceedings.[FN2]However, the Ninth Circuit also considered important the fact that "the vast majority of Tijani's detention-over 22 of the nearly 30 months that have so far elapsed-has occurred while the BIA *and this Court* have considered his appeals. "*Tijani,* 430 F.3d at 1246 (emphasis added). In this case, the majority of Ali's detention-41 of the 48 months that have so far elapsed-has also occurred either during the administrative proceedings (which are still ongoing with no definite termination point), or due to his appeals to the Ninth Circuit. Although it did not necessarily occur as the result of "an *unreasonable* delay by the INS in pursuing and completing deportation proceedings," the Court finds that detention for a period of *four years* is by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reason of the sheer length of time unreasonable and no longer justified. It is not the "expedited removal" required by *Tijani.*Instead, it has reached the point where it has "become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."*Kim,* 538 U.S. at 532 (Kennedy, J., concurring).

FN2."[T]he IJ took almost seven months to issue his decision; the BIA took just short of an additional 13 months."430 F.3d at 1241, n. 3 (Tashima, J., concurring).

**IT IS THEREFORE RECOMMENDED** that Mohammad Ali's petition for writ of habeas corpus be **GRANTED** (Doc. # 1).

**IT IS FURTHER RECOMMENDED** that the District Court order Ali's release from custody under an order of supervision, or in the alternative order Respondents, within 60 days of the District Court's Order, to provide a hearing to Ali before an immigration judge with the power to grant him bail unless Respondents establish that he is a flight risk or will be a danger to the community.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,*28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*Rule 72, Federal Rules of Civil Procedure.

D.Ariz.,2007.
Ali v. Crawford
Slip Copy, 2007 WL 1670165 (D.Ariz.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.



**C**
**Ali** v. Crawford
D.Ariz.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. **Arizona**.
Mohammed **ALI**, Petitioner,
v.
Phillip CRAWFORD, Field Office Director, ICE; Alberto Gonzales, Attorney General of the United States, Respondents.
**No. CV 06-01149-PHX-EHC.**

June 8, 2007.

**ORDER**

EARL H. CARROLL, United States District Judge.

***1** Petitioner Mohammed Ali filed a Petition for Writ of Habeas Corpus, arguing that his detention for four years while his removal proceedings have been pending is unlawful. (Dkt.1). This matter was referred to Magistrate Judge Duncan for Report and Recommendation ("R & R"). Magistrate Judge Duncan issued a R & R in accordance with 28 U.S.C. § 636(b)(1)(B). (Dkt.12). The R & R recommends that the Court grant the Petition and that the Court either order Petitioner's release from custody under an order of supervision, or, in the alternative, order Respondents to provide a hearing to Petitioner within sixty (60) days of its Order before an Immigration Judge with the power to grant him bail unless Respondents establish that he is a flight risk or will be a danger to the community. (Dkt.12).

Respondents filed their Objections to the R & R. (Dkt.15). Petitioner filed a Declaration in response to Respondents' Objections to the Report and Recommendation. (Dkt.17). Petitioner filed a Response to Government's Objections together with a Declaration. (Dkts.18-19).

***Standard of Review***

A district court judge reviews a Report and Recommendation of a Magistrate Judge *de novo*. *See*28 U.S.C. § 636(b)(1)(C).

***Discussion***

The Court having reviewed the record *de novo*, including the Objections filed by the Respondents, adopts in full the Report and Recommendation of the Magistrate Judge and incorporates the same as part of this Order.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge is **ADOPTED** in full. (Dkt.12).

**IT IS FURTHER ORDERED** that the Respondents' Objections to the Report and Recommendation of the Magistrate Judge are **DENIED.**(Dkt.15).

**IT IS FURTHER ORDERED** that Respondents shall have **sixty (60) days** from the date this Order is filed to provide a hearing to Petitioner before an Immigration Judge with the power to grant him bail unless Respondents establish that Petitioner is a flight risk or will be a danger to the community.

**IT IS FURTHER ORDERED** that if Respondents fail to provide a hearing to Petitioner before an Immigration Judge within **sixty (60) days** of the date this Order is filed, Petitioner shall be released from custody under an order of supervision.

**REPORT AND RECOMMENDATION**

DAVID K DUNCAN, United States Magistrate Judge.

TO THE HONORABLE EARL H. CARROLL, UNITED STATES DISTRICT JUDGE:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Mohammad Ali filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 24, 2006, arguing that his detention for four years while his removal proceedings have been pending is unlawful. *See Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir.2005). The Court agrees and recommends that his petition be granted.

## BACKGROUND

Ali is a native and citizen of Fiji, admitted into the United States on February 9, 1989 as a lawful permanent resident (Doc. # 11, Exh 1). On September 22, 1999, Ali was convicted in California Superior Court for Possession of a Controlled Substance, methamphetamine, in violation of section 11377(A) of the California Health and Safety Code, and for Vehicle Theft/Taking a Vehicle Without the Owner's Consent, in violation of section 10851(A) of the California Vehicle Code. Following a revocation of his probation, he was sentenced to 16 months and two years respectively (*Id.*, Exh 2).

***2** On February 13, 2003, the Department of Homeland Security (DHS) issued a Notice to Appear, charging Ali with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), alleging that at any time after admission he had been convicted of an aggravated felony as defined in section 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), relating to the illicit trafficking in a controlled substance and under section 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G), relating to a theft offense for which the term of imprisonment of at least 1 year was imposed (*Id.*, Exh 3). On March 17, 2003, Ali admitted the factual allegations *but contested the charges of removability(Id.*, Exh 4). The Immigration Judge designated Fiji as the country of removal; Ali requested withholding of removal and benefits under the Convention against Torture (*Id.*, Exh 4).

At the April 9, 2003 hearing, the Immigration Judge found both convictions to be particularly serious crimes, making Ali ineligible for withholding of removal. Because of his aggravated felony conviction, the Immigration Judge found that he was also not eligible for asylum. Finally, the Immigration Judge found that Ali had not established that it was more likely than not that he would be tortured if he returned to Fiji. Ali was ordered removed to Fiji; he reserved appeal (*Id.*, Exh 4, 5). On September 9, 2003, the Board of Immigration Appeals (BIA) dismissed his appeal ( *Id.*, Exh 7). On October 2, 2003, Ali filed a petition for review with the Ninth Circuit; on February 24, 2004, the Ninth Circuit dismissed his petition for review for lack of jurisdiction (*Id.*, Exh 8, 9).

On April 6, 2004, Ali filed a petition for writ of habeas corpus in the District Court. *See Ali v. Gonzales,* CIV 04-0690-PHX-EHC (DKD). In his petition, Ali argued that his California state felony conviction for possession of a controlled substance did not qualify as an aggravated felony, citing the Ninth Circuit's initial opinion, later withdrawn, in *Cazarez-Gutierrez v. Ashcroft,* 356 F.3d 1015 (9th Cir.2004). On July 20, 2005, the District Court ordered the case transferred to the Ninth Circuit Court of Appeals pursuant to section 106(c) of the REAL ID Act of 2005. On September 13, 2006, the Ninth Circuit granted the Government's motion to remand the petition for review to the BIA, in light of the intervening decisions in *Cazarez-Gutierrez v. Gonzales,* 382 F.3d 905 (9th Cir.2004) and *Penuliar v. Gonzales,* 435 F.3d 961 (9th Cir.2006). FN1

FN1. Although the Government has not provided the Court with the motion to remand, and the Ninth Circuit order filed by Ali does not reference the reason for remand, the Government noted the intervening decisions in its response. *See* Doc. # 11 at 8, fn 1.

## DISCUSSION

The Court notes initially that because of the Ninth Circuit's most recent stay of removal, the removal period has not commenced, and therefore 8 U.S.C. § 1226(c), and not § 1231, governs Ali's current detention. Respondents argue that although the requirement is not jurisdictional, the Court should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

decline to review the habeas petition because Ali does not allege that he ever requested bond or a bond hearing. Ali does not remain in custody because he failed to request bond; he is detained pursuant to DHS's most recent custody review and denial of release. Under these circumstances, the Court declines to require proof of a request for bond or a bond hearing as a prerequisite to filing a petition pursuant to 28 U.S.C. § 2241.

***3** In addition, Respondents contend that Ali's detention during removal proceedings has been brief, and his current detention is lawful under *Demore v. Kim,* 538 U.S. 510 (2003), and *Tijani v. Willis,* 430 F.3d 1241 (9th Cir.2005). They maintain further that the only reason Ali was detained on his first petition for review and in his first habeas proceeding (a period of almost one year) is because of his continued litigation, which has resulted in an extension of the removal period.

In *Kim,* where the alien had conceded deportability, "and hence, [was] subject to mandatory detention under § 1226(c),"538 U .S. at 523, the Supreme Court held that mandatory detention pursuant to § 1226(c) was constitutional "for the brief period necessary for [his] removal proceedings."538 U.S. at 512. Ali has never conceded deportability in this case. He makes the same argument in 2007 that he initially made four years earlier: his convictions do not constitute removable offenses or make him ineligible for withholding of removal.

The situation that Ali finds himself in is similar to the alien's situation in *Zadvydas v. Davis,* 533 U.S. 678 (2001), where "detention's goal is no longer practically attainable, [and] detention no longer bears a reasonable relation to the purpose for which the individual was committed."533 U.S. at 690. In a situation where the alien concedes deportability, " [s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."*Kim,* 538 U.S. at 527. Ali has never conceded deportability.

Finally, this case is unlike *Kim,* where "the detention ... is of a much shorter duration," with "a definite termination point." 538 U.S. at 529. It more closely resembles the situation in *Zadvydas,* where the period of detention was "indefinite" and " potentially permanent." 533 U.S. at 690-91. The amount of time Ali has been detained for the administrative proceedings *is still ongoing,* given the recent remand to the BIA-longer than the proceedings in *Kim,* and even the time period in *Tijani,* with no "definite termination point."

The reasons for detention in this case are also similar to those in *Tijani.*In *Tijani,* the alien's detention for almost two and one half years was " not the result of a criminal conviction; nor is it because he faces imminent removal ... [but] because the government *may* be able to prove he is subject to removal."430 F.3d at 1241 (Tashima, J, concurring) (emphasis in original). As Judge Tashima explains, "Tijani was convicted in California of offenses that have *never been found by a court or by the BIA to trigger mandatory detention* ... Today, nearly 30 months later, Tijani remains in mandatory detention while courts continue to sort out whether his offenses actually fall within the reach of the mandatory detention statute."430 F.3d at 1241. (emphasis added). In this case, Ali, like Tijani, has never *conceded* removability. The courts *and the administrative agencies* are "continu[ing] to sort out whether his offenses actually fall within the reach of the mandatory detention statute."

***4** In *Tijani,* two-thirds of the time he had been detained was due to the length of the administrative proceedings.[FN2]However, the Ninth Circuit also considered important the fact that "the vast majority of Tijani's detention-over 22 of the nearly 30 months that have so far elapsed-has occurred while the BIA *and this Court* have considered his appeals. "*Tijani,* 430 F.3d at 1246 (emphasis added). In this case, the majority of Ali's detention-41 of the 48 months that have so far elapsed-has also occurred either during the administrative proceedings (which are still ongoing with no definite termination point), or due to his appeals to the Ninth Circuit. Although it did not necessarily occur as the result of "an *unreasonable* delay by the INS in pursuing and completing deportation proceedings," the Court finds that detention for a period of *four years* is by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reason of the sheer length of time unreasonable and no longer justified. It is not the "expedited removal" required by *Tijani.*Instead, it has reached the point where it has "become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."*Kim,* 538 U.S. at 532 (Kennedy, J., concurring).

FN2."[T]he IJ took almost seven months to issue his decision; the BIA took just short of an additional 13 months."430 F.3d at 1241, n. 3 (Tashima, J., concurring).

**IT IS THEREFORE RECOMMENDED** that Mohammad Ali's petition for writ of habeas corpus be **GRANTED** (Doc. # 1).

**IT IS FURTHER RECOMMENDED** that the District Court order Ali's release from custody under an order of supervision, or in the alternative order Respondents, within 60 days of the District Court's Order, to provide a hearing to Ali before an immigration judge with the power to grant him bail unless Respondents establish that he is a flight risk or will be a danger to the community.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,*28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*Rule 72, Federal Rules of Civil Procedure.

D.Ariz.,2007.
Ali v. Crawford
Slip Copy, 2007 WL 1670165 (D.Ariz.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ORIGINAL

PETER J. ELIASBERG (SBN 189110)
AHILAN T. ARULANANTHAM (SBN 237841)
RANJANA NATARAJAN (SBN 230149)
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1616 Beverly Boulevard
Los Angeles, California 90026
Tel: (213) 977-9500
Fax: (213) 250-3919

ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT
JAN - 4 2007
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

~~LODGED~~ FILED
CLERK, U.S. DISTRICT COURT
NOV 21 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

SCANNED

Attorneys for Petitioner
(Additional counsel listed on following page)

~~Priority~~
Send
Enter
Closed
~~JS-5~~/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

RAYMOND GERALD AUGUSTINO SOEOTH, A# 75-694-789

Plaintiff-Petitioner,

vs.

ALBERTO GONZALES, United States Attorney General; MICHAEL CHERTOFF, Secretary, Department of Homeland Security; JULIE L. MYERS, Assistant Secretary, United States Immigration and Customs Enforcement; NORMA BONALES-GARIBAY, Field Office Director U.S. Immigration and Customs Enforcement; GEORGE MOLINAR, Chief of Detention and Removal Operations, San Pedro Detention Facility; STUART CORTEZ, Officer-In-Charge, San Pedro Detention Facility,

Defendant-Respondents.

Case No.: CV06-7451 TJH (MLG)

[~~PROPOSED~~] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

ENTERED
CLERK, U.S. DISTRICT COURT
JAN - 5 2007
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d)

16

Additional counsel:

JUDY RABINOVITZ*
AMERICAN CIVIL LIBERTIES FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2618
Facsimile: (212) 549-2654

CECILLIA D. WANG (CSB #187782)
MONICA M. RAMIREZ (CSB #234893)**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0775
Facsimile: (415) 395-0950

JAYASHRI SRIKANTIAH (CSB #189566)
STANFORD LAW SCHOOL IMMIGRANTS' RIGHTS CLINIC
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: (650) 724-2442
Facsimile: (650) 723-4426

*Application for admission *pro hac vice* forthcoming
**Pending admission to Central District of California

SCANNED

# [PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

The Court finds that Petitioner has demonstrated a substantial likelihood of success on the merits, that he will suffer irreparable injury in the absence of a preliminary injunction, and that the balance of hardship tips sharply in his favor. Therefore, this Court hereby ORDERS that the Defendant-Respondents and their employees, assigns, and all those acting in concert with them are preliminarily enjoined as follows:

_____ Petitioner must be immediately released on reasonable conditions of supervision, including electronic monitoring if necessary.

OR, in the alternative:

__X__ Petitioner must be ~~released~~ within thirty days ~~unless he is~~ afforded an individual hearing before an immigration judge concerning whether his prolonged detention is justified. At the hearing, the immigration judge shall order Petitioner released on reasonable conditions unless the government shows by clear and convincing evidence that Petitioner presents a sufficient danger or risk of flight to justify his detention in light of how long he has been detained already and the

///

///

///

ORIGINAL

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

07 DEC -3 AM 11:47

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: [signature] DEPUTY

**I. (a) PLAINTIFFS** Sylvester Owino

San Diego Detention Center (CCA)

P.O. Box 439049

San Ysidro, CA 92143

**DEFENDANTS** Michael Chertoff, Michael Mukasey, et al.

(b) County of Residence of First Listed Plaintiff SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

'07 CV 2267 WQH (POR)

Attorneys (If Known) Samuel Bettwy (619) 557-7119
ASSISTANT UNITED STATES ATTORNEY
OFFICE OF THE UNITED STATES ATTORNEY
880 FRONT STREET, SAN DIEGO, CA 92101

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury—Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus:
- ☒ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS— Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. § 2241

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 DEMAND $ CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE 10/23/07 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______