KAREN P. HEWITT
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California State Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7119

Attorneys for Respondents

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary of Homeland Security; et al.,<br><br>Respondents. | No. 07cv2267-WQH (POR)<br>A97 469 354<br><br>GOVERNMENT'S RETURN IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS |

I

INTRODUCTION

Petitioner Owino seeks release pending his petition for review because he has been in detention for more than 25 months. Yet, he fails to inform the Court that, ever since August 11, 2006, he has refused to complete an application for travel documents to the Kenyan embassy for his repatriation. See 8 U.S.C. § 1231(a)(1)(C) (extension of removal period for failure to cooperate). Therefore, the Zadvydas[1/] decision does not apply. Rather, 8 U.S.C. § 1231(a)(1)(C) and Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003), apply.

///

1/ Zadvydas v. Davis, 533 U.S. 678 (2001).

Furthermore, the duration of his proceedings before the immigration judge ("IJ") and the Board of Immigration Appeals ("BIA"), which were completed on August 2, 2006, was consistent with the duration of lawful detention contemplated by the Court in Kim v. Demore, 538 U.S. 510, 530-31 (2003). Therefore, the Tijani and Nadarajah decisions[2/] do not apply. In addition the Tijani and Nadarajh are distinguishable for several reasons set forth below.

## II

## FACTUAL BACKGROUND

Owino is a native and citizen of Kenya. [Exs. 1, 4; Pet. at 3.][3/] On December 16, 1998, he was admitted to the United States as a nonimmigrant student to attend the University of California at San Diego. [Exs. 1-2; Pet. at 3.] On June 10, 2003, he was convicted of second degree robbery, with an enhancement for use of a knife, and sentenced to three years in prison. [Ex. 2; Pet. at 3.] On or about November 8, 2005, the Department of Homeland Security ("DHS") placed Owino in removal proceedings, charging him with deportability on the basis of the robbery conviction [Exs. 3-4; Pet. at 3], and on April 10, 2006, the IJ ordered him removed from the United States to Kenya. [Ex. 5; Pet. at 3.] On August 2, 2006, the BIA upheld the IJ's decision. [Exs. 6-9; Pet. at 3.]

On August 8, 2006, DHS provided Owino with an application for travel documents for him to complete for submission to the Kenyan embassy. [Ex. 18.] Owino refused to complete the application, and DHS served him with formal notice of its determination he had failed to cooperate. [Id..] On January 18, 2008, DHS once again attempted to obtain Owino's cooperation. [Ex. 22-23.]

---

2/ Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005); Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006).

3/ "Ex." refers to the accompanying true copy of pertinent documents located in Owino's DHS "A-File" No. A97 469 354.

On September 1, 2006, thirty days after the BIA's decision, see 8 U.S.C. § 1252(b)(1), Owino petitioned for review of the BIA's decision by the Ninth Circuit. [Pet. at 4.] Owino v. Gonzales, No. 06-74297. Owino also requested a stay of removal which resulted in an automatic stay[4/] until June 5, 2007, when the Ninth Circuit ultimately denied the request for stay of removal. [Ex. 13.]

On September 10, 2007, the parties completed briefing before the Ninth Circuit in Owino v. Gonzales, No. 06-74297. [Ex. 14.]

## III

## ARGUMENT

### A. ZADVYDAS DOES NOT APPLY, BECAUSE OWINO'S FAILURE TO COOPERATE HAS EXTENDED THE REMOVAL PERIOD

Petitioner Owino seeks release from custody pending his petition for review in Owino v. Gonzales, No. 06-74297. [Exs. 10-14.] He appears to claim that his removal period elapsed ninety days after June 5, 2007 (when the Ninth Circuit ultimately denied his stay request), see 8 U.S.C. § 1231(a)(1)(B), and that, therefore, DHS no longer has authority to detain him. [Pet. at 3, 5] However, the reason that DHS has not removed Owino is that he has failed to cooperate in submitting an application for travel documents to the Kenyan embassy. For this reason, the removal period, during which detention is mandated pursuant to 8 U.S.C. § 1231(a)(2), has been extended pursuant to 8 U.S.C. § 1231(a)(1)(C):

> (C) Suspension of period
>
> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

Id.. See Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003).

---

4/ See 9th Cir. General Order No. 6.4(c)(1)(3). [Ex. 12.]

Because the removal period has been extended, Zadvydas does not even apply in this case. Zadvydas concerns the reasonable duration of detention after the removal period has ended. Id. at 697 (noting that "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point").

At any rate, even if Zadvydas applied, Owino makes no effort to satisfy his burden, prescribed in Zadvydas, to present evidence to demonstrate that his removal is not likely in the reasonably foreseeable future. In Zadvydas, the Supreme Court held that an alien may be held beyond the ninety-day removal period and that six months constitutes a "presumptively reasonable period of detention." Zadvydas v. Davis, 533 U.S. at 701. Release is not automatically mandated after the expiration of the six-month period:

> This six-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

Id. (emphasis added). The Court held that the INS (now ICE) can continue to detain an alien beyond six months unless the alien establishes good reason to conclude there is no significant likelihood of removal. Once the alien makes such a showing, the burden is on the Government to rebut this showing.

> [O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

Id. The Department of Homeland Security routinely repatriates Kenyans, and Owino's case does not appear to be exceptional. The only apparent obstacle to his repatriation is his failure to cooperate.

///

B. FAILURE TO STATE A CLAIM UNDER *TIJANI* OR *NADARAJAH*

Citing Tijani and Nadarajah, Owino sweepingly contends that he should be released because, in all, he has been detained for over twenty-five months. [Pet. at 25.] He does not blame Respondents, and does not volunteer the reasons, for the length of his detention. As explained above, he has failed to cooperate with DHS to obtain travel documents for his removal ever since August 11, 2006. In fact, ever since August 2, 2006, the date of the BIA's decision, his own actions and inactions have resulted in prolongation of his detention. He took thirty days to file a petition for review, he has declined to voluntarily depart pending his petition for review,[5/] and he has refused to cooperate with DHS in obtaining travel documentation for his repatriation.

In addition, he does not allege that his administrative proceedings before the IJ and the BIA were extraordinarily prolonged, and he does not blame Respondents for the length of duration of his proceedings before the Ninth Circuit. The length of his proceedings before the IJ were not unusually prolonged considering that they were continued so that he could make several applications for relief. See Kim v. Demore, 538 U.S. at 530-31 (noting that Kim "was detained for somewhat longer than the average [of 47 days], . . . but himself had requested a continuance of his removal proceedings"). In fact, Kim was in custody for more than six months during his proceedings before the IJ, and his administrative proceedings lasted more than three

5/ See Cruz-Ortiz v. Gonzales, No. 06-55654, 221 Fed. Appx. 531, 2007 WL 580670 at *1 ("appellant is being voluntarily detained--upon his requested stay of removal--pending appeal of his final removal order") (9th Cir. Feb. 22, 2007) (unpublished) (copy attached). The voluntariness of Owino's detention is a superfluous issue in this case given his refusal to complete an application for his travel documents for repatriation to Kenya. If he were to complete the documents, and Kenya were to refuse to issue travel documents, voluntariness would become a controlling issue.

years.[6] Like Kim, Owino was detained pending proceedings before the IJ for six months (from February 1 to August 2, 2006) due to his request for his continuance to pursue applications for relief. Owino's proceedings before the BIA lasted only four months. See id. at 529 (noting that the BIA "appeal takes an average of four months").

In addition, Nadarajah is distinguishable from this case because the petitioner had been detained for five years, had never been ordered removed, and had "won relief at every administrative level . . . ." 443 F.3d at 1081. The Ninth Circuit held that it was unlikely that Nadarajah would be removed in the reasonably foreseeable future because he had "won at every administrative level . . . " and in so doing had "won relief denied 98% of applicants [for asylum] . . . a powerful indicated of the improbability of his foreseeable removal, by any objective measure." Id. Further, Nadarajah had received a withholding of removal order, which the government had not contested. Id. The Ninth Circuit ruled that, in such circumstances, "Nadarajah has established that there is no significant likelihood of his removal in the reasonably foreseeable future." Id. By contrast, Owino has failed to win relief at any level, and the only obstacle to his removal at this juncture is his own refusal to cooperate with DHS to obtain travel documents from the Kenyan consulate.

Tijani is also distinguishable from this case because Tijani had been detained mandatorily for 21 months pending administrative proceedings and was not subject to a final removal order at the time of oral argument before the Ninth Circuit. By contrast, Owino's administrative proceedings have been completed since August 2,

---

6/ See Kim v. Ziglar, 276 F.3d 523, 526 (9th Cir. 2002) ("On August 10, 1999, after Kim had been in custody for six months, [when] the district court . . . ordered the INS to hold a bail hearing to determine Kim's risk of flight and dangerousness. In lieu of holding a bail hearing, the INS released Kim on a $5,000 bond"), rev's sub nom Demore v. Kim, 538 U.S. 510 (2003). Kim's merits hearing before the IJ was not held for over three years, until March 2002. Id.

2006, and they lasted less than a total of ten months. As explained above, the duration of Owino's administrative proceedings is consistent with the duration of lawful detention contemplated in the Kim case.

IV

CONCLUSION

For the reasons set forth above, the Petition should be denied.

DATED: January 18, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ *Samuel W. Bettwy*

SAMUEL W. BETTWY
Assistant U.S. Attorney