**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SYLVESTER OWINO,

Petitioner,

vs.

MICHAEL CHERTOFF, Secretary of Homeland Security, et al.,

Respondents.

CASE NO. 07cv2267 WQH (POR)

**ORDER**

HAYES, Judge:

The matter before the Court is the Petition for Writ of Habeas Corpus (Doc. # 1) filed by Petitioner Sylvester Owino.

**Background**

Petitioner is a native and citizen of Kenya. *Petition*, p. 3. On December 16, 1998, Petitioner was admitted to the United States on a student visa. *Id.* In 2003, Petitioner was convicted of second degree robbery and sentenced to three years in prison. *Id.* On November 8, 2005, upon completion of the term of imprisonment, Petitioner was transferred to Department of Homeland Security ("DHS") custody. *Id.*

On April 10, 2006, a removal hearing was held and the Immigration Judge ("IJ") found Petitioner removable, denied his application for asylum and withholding of removal, denied his claim for deferral of removal under the Convention Against Torture ("CAT"), and made an adverse credibility finding. *Id.* Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed Petitioner's appeal. *Id.; Return*, Exhibits, p.

9.

On September 1, 2006, Petitioner filed a timely petition for review of his removal order with the United States Court of Appeals for the Ninth Circuit. *Id.* On September 1, 2006, Petitioner also moved for a stay of removal pending his appeal of his removal order. On February 23, 2007, the Ninth Circuit denied the motion to stay. On June 5, 2007, the Ninth Circuit denied Petitioner's motion for reconsideration of the motion to stay as untimely. *Petition,* p. 3. On June 5, 2007, Petitioner filed his opening brief for his appeal of his removal order with the Ninth Circuit. On June 25, 2007, Respondents filed their brief. On September 10, 2007, Petitioner filed his reply. *Id.* at 4. Petitioner's appeal awaits assignment to a merits panel for argument and submission. *Id.*

On December 3, 2007, Petitioner filed the Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. (Doc. #1). Petitioner alleges that he has been subjected to prolonged detention because he has been in DHS custody since November 8, 2005, and his order of removal is currently on review in the Ninth Circuit. The Petition alleges that Petitioner's detention is unlawful under *Tijani v. Willis,* 430 F.3d 1241 (9th Cir. 2005), and *Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir. 2006), which apply the Supreme Court's principles on indefinite detention laid down in *Zadvydas v. Davis,* 553 U.S. 678 (2001), to detainees who are subject to prolonged detention and with an order of removal on review. Petitioner requests that this Court order Respondents to release him from custody under the conditions of supervision set forth in 8 U.S.C. § 1231(a)(3). Alternatively, Petitioner requests that the Court order a release hearing to evaluate Petitioner's eligibility for supervision under appropriate conditions.

On January 18, 2008, Respondents filed a return in opposition to the Petition. (Doc. # 9). Respondents contend that DHS has not removed Petitioner because he has failed to cooperate in submitting an application for travel documents to the Kenyan embassy. On February 15, 2008, Petitioner filed a traverse to the Petition. (Doc. # 13).

On April 30, 2008, this Court issued an order requiring Respondents to file a status report as to Petitioner's application for travel documents and efforts to secure Petitioner's

removal. (Doc. # 15). On May 19, 2008, Respondents filed a status report. (Doc. # 17). On May 29, 2008, Petitioner filed a declaration updating the status of his travel document request. (Doc. # 19). On June 12, 2008, Respondents filed a supplement to the status report. (Doc. # 20). On June 17, 2008, Petitioner filed a declaration regarding Respondents' supplement to the status report. (Doc. # 21).

## **Analysis**

Respondents contend that *Zadvydas* does not apply to this action because "the reason that DHS has not removed [Petitioner] is that he has failed to cooperate in submitting an application for travel documents to the Kenyan embassy." *Return*, p. 3. Respondents further contend that Petitioner has "made a communication with the Kenyan Consulate that has had the effect of discouraging the Consulate from issuing a travel document." (Doc. # 17, p. 1). Respondents contend that even if *Zadvydas* did apply, Petitioner has not satisfied his burden of demonstrating that his removal to Kenya is not likely in the reasonably foreseeable future. Respondents state that DHS "routinely repatriates Kenyans, and [Petitioner's] case does not appear to be exceptional." *Id.* at 4.

Respondents submitted the declaration of Deportation Officer Eliana Hayes, who attests that "[o]n May 2, 2008, Owino completed a travel document application, which was then submitted to the Consulate of Kenya in Washington, DC." (Doc. # 17, p. 1). Deportation Officer Hayes attests that on May 19, 2008, she spoke with a consular officer at the Kenyan Consulate who told Hayes that Petitioner called and informed the Consulate that he had an appeal pending, and that in light of this conversation regarding Petitioner's pending appeal, "the consulate was unwilling to issue a travel document at this time." *Id.*, Exhibit 1. In Respondents' supplement to the status report, Respondents state that "Officer Hayes determined that the Kenyan consulate is willing to issue a travel document if Owino states that he is willing to return to Kenya. However, because Owino, through an attorney, recently notified the consulate that he has an appeal pending before the Ninth Circuit (even though his motion to stay removal was denied by the Ninth Circuit on June 5, 2007), and because Owino has expressed his unwillingness to return to Kenya pending those proceedings, the Kenyan

consulate is unwilling to issue the travel document." (Doc. # 20, p. 1). Respondents submitted an additional declaration of Deportation Officer Hayes, who attests that on June 5, 2008, the consular officer at the Kenyan Consulate "told me that ICE does not need a police report to obtain an emergency travel document for Owino and that she will not issue a travel document to Owino until there are no longer any appeals pending." *Id.*, Exhibit 1. Deportation Officer Hayes attests that on June 6, 2008, "I talked with [the consular officer] again about the consulate's refusal to issue a travel document as long as Owino's Ninth Circuit appeal is pending. She stated that Owino need only tell the consulate that he would like to return home and they would issue him a travel document regardless of what is pending. So, the power to return to his home in Kenya is in Owino's hands." *Id.*, Exhibit 1.

Petitioner contends that his initial refusal submit an application for travel documents "was made on the basis of a good faith mistake of law, and at the first opportunity that ICE gave him after August 2006 to cooperate, after requesting a short delay to comply with counsel, he complied fully." *Traverse*, p. 4. Petitioner contends that his conduct does not rise to the level justifying prolonged detention. Petitioner further contends that "there is good reason to believe that removal is not significantly likely in the reasonably foreseeable future under *Zadvydas*" because "Kenya is not likely to respond to any travel permission request at any time in the reasonably foreseeable future." *Traverse*, p. 11.

In Petitioner's declaration updating status of travel document request, Petitioner attests that initially he believed that the Kenyan embassy would not approve travel documents to Kenya unless he presented his passport. Petitioner attests that his passport was lost in 2003 when he was arrested, and that "[i]n order to show the Kenyan officials that I no longer possess my original passport, they require a police report showing the passport was reported missing." (Doc. # 19, ¶¶ 2-4). Petitioner attests that "I have tried since February 2008 to obtain the cooperation of my ICE deportation officers in securing the necessary documents to request the required police reports." *Id.* Petitioner attests that "[i]n the beginning of May, I completed and submitted to the Kenyan embassy the forms necessary to obtain a replacement passport." *Id.* ¶ 5. Petitioner attests that Officer Hayes informed Petitioner that it would not assist him in

obtaining the police report because a passport was not needed to obtain travel documents to Kenya. Petitioner attests that "I explained that I needed a replacement passport to facilitate my efforts to obtain asylum in a third country." *Id.* ¶ 6.

A. <u>Authority to Detain Petitioner</u>

The authority of DHS to detain an alien subject to an order of removal is found in 8 U.S.C. sections 1226 and 1231. Section 1226 governs the detention of aliens whose orders of removal are still subject to active legal challenges, providing that "an alien may be arrested or detained pending a decision on whether the alien is to be removed to from the United States." 8 U.S.C. § 1226(a). Section 1231 governs the detention of aliens who are subject to final orders of removal. Section 1231(a)(1) describes how a removal order becomes final, providing that the removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> . . .

8 U.S.C. § 1231(a)(1)(B). Where a court issues a stay of removal pending review of an administrative removal order, the alien continues to be detained under section 1226 until the court renders its decision. *Martinez v. Gonzales*, 504 F. Supp. 2d 887, 893 (C.D. Cal. 2007); *see Ma v. Ashcroft*, 257 F.3d 1095, 1104 (9th Cir. 2001).

Petitioner's appeal of his order of removal is currently pending in the Ninth Circuit. Pursuant to the Ninth Circuit Local Rules, Petitioner was granted a temporary stay when he filed his motion to stay. However, the Ninth Circuit denied Petitioner's motion to stay, thus lifting the temporary stay of his removal. On June 5, 2007, the Ninth Circuit denied Petitioner's motion for reconsideration of the motion to stay. The Court concludes that Petitioner's order of removal is final in light of the BIA's dismissal of Petitioner's appeal of his order of removal and Ninth Circuit's denial of Petitioner's motion to stay. Therefore, section 1231, rather than section 1226, controls Petitioner's detention. *Nadarajah* and *Tijani*, which address an alien's detention before the alien is subject to a final order of removal, do not apply.

B. Legality of Petitioner's Detention

8 U.S.C. section 1231 provides that once an alien is subject to a final order of removal, "the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1). Pursuant to 8 U.S.C. section 1231(a)(3), if the alien is not removed within this 90 day removal period, the alien, pending removal, shall be released subject to supervision under regulations prescribed by the Attorney General. Section 1231(a)(6) provides that an alien subject to a final order of removal "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond" the 90 day removal period. 8 U.S.C. § 1231(a)(6).

The authority under section 1231(a)(6) to detain an alien beyond the 90 day removal period is not absolute. If, after six months of post-removal detention, an "alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. The Supreme Court rejected the contention that continued detention is lawful as long as "good faith efforts to effectuate . . . deportation continue," and concluded that "this standard would seem to require an alien seeking release to show the absence of *any* prospect of removal - no matter how unlikely or unforeseeable - which demands more than our reading of the statute can bear." *Id.* at 702. As the "period for confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Section 1231(a)(1)(C) provides that the post-removal detention period "shall be extended . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure." 8 U.S.C. § 1231(a)(1)(C). "[N]otwithstanding *Zadvydas*, the statutory exception of 8 U.S.C. § 1231(a)(1)(C) . . . authorizes [DHS] to continue detaining an alien whose refusal to apply in good faith for travel documents prevents [DHS] from removing him from the United States." *Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003); *see also Pelich v. INS*, 329 F.3d 1057 (9th Cir. 2003). The Ninth Circuit has stated:

> consistent with *Zadvydas* and *Pelich*, . . . when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future. We cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas*, 533 U.S. at 690, until the alien makes a full and honest effort to secure travel documents.

*Lema*, 341 F.3d at 856. "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich*, 329 F.3d at 1060. The alien has the initial burden of showing no significant likelihood of removal in the reasonably foreseeable future; the alien cannot carry this burden when the alien does not fully and honestly cooperate with officials in obtaining travel documents from a foreign embassy. *Lema*, 341 F.3d at 856. District courts considering the issue ask whether the petitioner has the "keys to his freedom" in order to determine if the petitioner is preventing his own removal under section 1231(a)(1)(C). *Pelich*, 329 F.3d at 1060.

Respondents' evidence demonstrates that a police report reporting Petitioner's passport as missing is not necessary to obtain a travel document to Kenya, and that Kenya will issue a travel document despite Petitioner's pending appeal. Respondents have produced evidence which demonstrates that Petitioner "need only tell the consulate that he would like to return home and they would issue him a travel document regardless of what is pending." (Doc. # 20, p. 2). Prior to ruling on the merits of the Petition, the Court will allow Petitioner to submit any argument or evidence to rebut Respondents' supplement to status report.

## Conclusion

IT IS HEREBY ORDERED that Petitioner shall file any response to the supplement to status report (Doc. # 20) filed by Respondents **on or before Monday, July 28, 2008.**

DATED: July 2, 2008

William Q. Hayes

**WILLIAM Q. HAYES**
United States District Judge