ORIGINAL

SYLVESTER OWINO
A97-469-354
San Diego Detention Center (CCA)
P.O. Box 439049
San Ysidro, CA 92143
PRO SE

FILED
08 JUL 28 PM 3:26
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**(HON. WILLIAM Q. HAYES)**

| | |
|---|---|
| **SYLVESTER OWINO, [A97-469-354]** Petitioner, v. **MICHAEL CHERTOFF, et al.,** Respondents. | No. 07-CV2267-WQH (POR) **COURT-ORDERED RESPONSE TO STATUS REPORT SUPPLEMENT** |

Pursuant to the Court's Order entered on July 2, 2008, Petitioner hereby responds to the Government's new allegations of deliberate obstruction contained in its Supplement filed on June 12, 2008 (Dkt. Entry # 20), to its Status Report filed on May 19, 2008 (Dkt. Entry # 17).

Petitioner filed the instant Petition on December 3, 2007, arguing that the excessive delay in processing his petition for review in the Court of Appeals had unreasonably extended his civil detention beyond the time allowed under Zadvydas v. Davis, 533 U.S. 678 (2001), and the Ninth Circuit cases of Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), and Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006). At the time, this Court decided that the dispositive issues had been sufficiently addressed in the Petition so that appointment of counsel was unnecessary. See Order Denying Appointment filed on December 18, 2007 (Dkt. Entry # 8).

In their Return, Respondents raised the argument that Petitioner was not entitled to release because of deliberate obstruction justifying continued detention under Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003). In his Traverse, Petitioner argued that he had not failed to cooperate in any way that impeded the removal

process, but had, in fact, made extraordinary, personal efforts–unaided by ICE–to effect his removal to a third country. Moreover, given the political situation developing in Kenya, it was now more than likely that Petitioner was also eligible for release under a classic Zadvydas theory, since Kenya would be highly reluctant to repatriate a member of the insurgent minority whom the police had already targeted as supporting the political opposition and who had leveled an accusation against Kenya under the Convention Against Torture ("CAT"). Given the new complication of this case, Petitioner sought reconsideration of the motion to appoint counsel.

No action was taken on either the motion to reconsider or on the Petition following the filing of the Traverse in February. Over two months later, the Court ordered an *ex parte* status report on removal efforts from Respondents. The Status Report alleged further acts of obstruction. Though not invited by the Court, Petitioner filed his own declaration regarding developments in the attempts to obtain travel documents on May 29, 2008 (Dkt. Entry #19). Additional allegations were made in the latest Supplement to the Status Report, some of which claimed obstructive acts by James Fife, the Federal Defender assisting Petitioner on this case. Mr. Fife filed a Declaration denying those allegations on June 17, 2008 (Dkt. Entry # 21).

Respondents have now supplemented their original, meritless Pelich arguments with additional assertions in the Status Report and the Supplement that Petitioner has impeded his removal by: (1) contacting his own embassy; (2) communicating truthful information about the status of his case; and (3) failing to express a desire to return to a country where he was tortured by police and an arrest warrant remains outstanding, so that return to Kenya means rendering him up to his torturers. None of Respondents' contentions has any merit.

**Contacting the Embassy**

Respondents make the allegation in both the Status Report and in the Supplement that Petitioner is deliberately obstructing removal efforts by contacting his own embassy. In the Status Report, Respondents contend that mere communication with a foreign embassy is unwarranted interference, in this and in other cases, noting "an emerging pattern in similar cases in which habeas petitioners and/or their attorneys are communicating with foreign consulates for purposes unrelated to the facilitation of the issuance of a travel document." Status Report at 1. Respondents object to any communication between deportees and their diplomatic missions that is not channeled through and controlled by ICE. See id.

Leaving aside Respondents' whole-cloth, false accusation of unethical conduct by opposing counsel, this effort to impose a virtual gag rule in Zadvydas/Tijani/Nadarajah cases was raised and rejected in those "similar cases" referred to. In the case of Sesay v. Chertoff, No. 07CV2354-JM (LSP) (S.D. Cal.), Respondents requested Judge Miller prohibit the petitioner or his attorney from contacting embassy officials, making the same allegations of improper influencing or interference as raised here. However, Judge Miller refused to order prior restraint against contacting one's own diplomatic mission.

Indeed, such an order would be illegal, since it would violate the provisions of the Vienna Convention on Consular Relations, Apr. 18, 1961, art. 36(1)(a), 21 U.S.T. 77, 596 U.N.T.S. 261. The Convention, binding on the United States, provides that "[c]onsular officers *shall be free* to communicate with nationals of the sending State" and that "[n]ationals of the sending State *shall have the same freedom* with respect to communication with and access to consular officers" (emphasis added). In general, prior restraint of speech is permitted only in the most extraordinary circumstances amounting to a security or natural emergency. See New York Times Co. v. United States, 403 U.S. 713, 714 (1971) (per curiam); Near v. Minnesota, 283 U.S. 697, 722-23 (1931). Unfounded suspicion of adverse influence on the removal process of a detainee does not rise to this level.

Because every detainee has the *right* to communicate freely with his diplomatic mission in order to ascertain the truth of the Government's allegations, to gather information in defense of his Petition, and to inquire about the status and history of repatriation requests, among other things, the mere fact of communicating with the Kenyan officials cannot be treated as evidence of "obstruction" that warrants indefinite detention under Pelich.

**Communication of Truthful Information**

Since the mere *act* of contacting a diplomatic mission cannot be treated as deliberate obstruction, Respondents adduce unreliable, triple hearsay to show that Petitioner has attempted to obstruct his removal to Kenya. In the Declaration of Deportation Officer Eliana Hayes ("Hayes I") attached to the Status Report, the officer reports conversations with a Kenyan embassy official in Washington. Officer Hayes reports that the embassy official stated on May 19, 2008, that Petitioner had "called her and told her that he had an appeal pending." Hayes I ¶ 6. Because of this, the embassy was unwilling to issue travel documents. Id. ¶ 7. Officer Hayes, however, stated that there was no stay of removal and sent a copy of the stay denial to the embassy.

Id. ¶¶ 8-9. Officer Hayes stated the embassy official asserted she was getting conflicting information from Petitioner and ICE, but no specifics are related. Id. ¶ 10.

After being informed that no stay order was in force, the embassy official allegedly said "she would look into it and get back." Hayes I ¶ 11. However, apparently the absence of a stay made no substantive difference to the Kenyan officials, since nearly a month later, when Respondents' Supplement was filed, the embassy official was still insisting that "she will not issue a travel document to [Mr.] Owino until there are no longer any appeals pending." Declaration of Deportation Officer Eliana Hayes ("Hayes II") ¶ 4. The next day, Officer Hayes contacted the embassy again, and the official this time stated that Petitioner would be received back–despite the pending appeal–if he would "only tell the consulate that he would like to return home." Id. ¶ 5. Contrary to the statement in Hayes I ¶ 6 that Petitioner told the official directly that he had a pending appeal, Officer Hayes now reported the official as saying she had "learned of the pending Ninth Circuit appeal from information that was mailed to the consulate by [Mr.] Owino's attorney," with a copy of the document attached to the Declaration. Hayes II ¶ 6.

As for the allegation that telling the embassy truthful information on the status of the pending appeal constitutes "deliberate obstruction" under Pelich, the Government cannot penalize Petitioner for telling his own diplomatic mission the truth about the status of his case, even if that has a known deterrent effect on the repatriation decision. In Rajigah v. Conway, 268 F. Supp.2d 159, 165-66 (E.D.N.Y. 2003), the detainee from Guyana truthfully told the embassy that he was considering further court action regarding his removal. The embassy had a policy that it would not repatriate while appeals are pending, and so refused to issue travel documents. See id. However, the district court noted that "obstruction" relates to "some sort of bad faith failure to cooperate," such as providing false information or refusing to complete the necessary forms. Id. at 165. Telling the embassy truthful information which causes the latter to refuse travel permission does not count as "bad faith" obstruction. See id. Accordingly, the court granted the petition. Petitioner here is in the same situation, where the embassy initially refused–even after being told that no stay was in effect–to issue documents while an appeal was pending. As in Rajigah, relating the truth about the status of pending court cases cannot rationally be treated as "obstruction," even when the embassy has a fixed policy to refuse repatriation under those conditions.

Respondents make two other, veiled allegations of obstruction in the Supplement: that Petitioner

misrepresented the need for a replacement for his missing Kenyan passport and that "[Mr.] Owino, [through] an attorney, recently notified the consulate that he has an appeal pending." Supplement at 1. However, in Petitioner's Declaration Updating Status of Travel Document Request filed on May 29, 2008 ("Petitioner Declaration"), Petitioner indicated that he had been told by the consulate that he needed a replacement passport as part of the application documents which he was submitting in order to comply with ICE's cooperation requirements. See Petitioner Declaration ¶ 2. A copy of the letter from the consul confirming that understanding was submitted to the Court as an attachment to the Declaration of James Fife Re: Government's Supplement filed on June 17, 2008 ("Fife Declaration").[1] Thus, Respondents' suggestion is false that Petitioner has misstated the requirements for Kenyan travel documents. As for the allegation that "an attorney" provided misleading information improperly influencing the Kenyan embassy, as the Fife Declaration indicates, Officer Hayes's hearsay statements are incorrect. The newly alleged "attorney" origin for the appeal information is not only untrue, but it contradicts Respondents' earlier assertion that *Petitioner* was the origin of this information. See Hayes I ¶ 6. Moreover, if a petitioner's conveying true information to an embassy is not obstruction, see Rajigah, then conveying the same information through an attorney can be no more so.

Ultimately, it is clear that nothing Petitioner did or said in his conversations with his own diplomatic mission can be construed as deliberate obstruction under Pelich and similar cases. Telling the truth about the status of his appeal does not qualify. Respondents' own evidence in Hayes I and Hayes II indicates that even weeks after the matter of the stay had been clarified, the embassy still insisted that no travel permission would be given while the appeal was pending, unless Petitioner expresses his consent to interim repatriation. See Hayes II ¶ 5; Supplement at 2. Indeed, by seeking a replacement passport to satisfy the consulate general's demands, even when ICE insisted that he did not need to replace the passport, Petitioner Declaration ¶¶ 2-6; Hayes II ¶ 4, Petitioner shows his willingness to cooperate is exceptional. Similarly, his efforts to replace his passport to facilitate removal to a third country also show that he is far from obstructing the removal efforts,

[1] Respondents' relation of detailed discussions between Petitioner and officials at the Kenyan embassy in Washington are somewhat mystifying. Petitioner's dealings have been primarily with the officials at the Kenyan consulate general in Los Angeles, not with the embassy. As the letter from the Los Angeles consulate suggests, there appears to be some discrepancy between the two diplomatic missions' requirements for Petitioner's repatriation.

but is in fact taking the initiative, despite ICE's lack of assistance. See Petitioner Declaration ¶¶ 2-6; Traverse at 4-5.

**Unwillingness to Return**

According to Officer Hayes's second declaration, the Kenyan embassy is willing to accept Petitioner's return if he will "only tell the consulate that he would like to return home." Hayes II ¶ 5. Respondents argue that because of this alleged official position–suddenly changed from the seemingly firm refusal just a day before–"the burden is now on [Mr.] Owino simply to agree to the issuance of a travel document for his repatriation." Supplement at 2.

Respondents overlook the simple fact that Petitioner has a torture claim outstanding against the Kenyan government, one which the BIA found credible, if not corroborated. Petitioner attempted to support his claim under CAT with documents showing his arrest and his treatment for the effects of his torture. See Appendix attached hereto (copies of documents submitted in underlying removal proceedings). Naturally, the Kenyan police do not keep or willingly release documentation of their own acts of criminal conduct, so the record is sparse. The BIA found Petitioner credible, but erred in refusing on mere technical grounds to admit corroborating evidence in the form of live, telephonic testimony. In light of the fact that Petitioner has suffered inhumane treatment and torture for political reasons at the hands of the Kenyan police and that an arrest warrant is still outstanding, see Appendix, it is not surprising that Petitioner is not willing to "tell the consulate that he would like to return home," where he will be subject to immediate arrest and further abuse for having raised a CAT claim against the government, all in addition to the original political and ethnic animus officials bear against him. In other words, Respondents fault Petitioner's lack of cooperation for failing to lie about his reluctance to return to Kenya. That is not a legitimate basis for a finding of obstruction.

Respondents callously and cavalierly argue that Petitioner's unwillingness to return to a country where he is subject to arrest, torture, and possibly death, should be viewed as deliberate obstruction warranting prolonged, indefinite, civil detention. In any event, their position is legally unjustified. The situation here is identical to that in Seretse-Khama v. Ashcroft, 215 F. Supp.2d 37, 51-53 (D.D.C. 2002), where the fact that the deportee honestly told the consul on the phone that he did not want to return to Liberia, prompting a refusal, did not qualify as an act of obstruction. Like Rajigah, a detainee cannot be faulted for telling the truth to embassy officials, even if that has the practical effect of discouraging issuance of travel documents. Again,

Pelich detention applies only to acts of bad faith, and telling officials the truth, even if an inconvenient truth, cannot be so construed. See Pelich, 329 F.3d at 1061 n.3 (not obstruction if detainee refuses to state facts he believes are untrue). Otherwise, ICE could detain deportees indefinitely just for reporting entirely true facts during embassy interviews, such as the details of their criminal record, the length of time they have been away from their native countries, their lack of relatives remaining in the country, or their having a particular disease or condition, all of which are factors known to produce reluctance to repatriate. The official position cannot be to condone or foment perjury in order to effect removal, so that the gauge of cooperation is the detainee's willingness to lie to secure a deportation. Our deportation process cannot be built on official promotion of mendacity, as Respondents' argument implies. As in Seretse-Khama, Petitioner's honest position that he does not want to return to his homeland to be arrested and tortured is not a basis for finding non-cooperation. Due process cannot countenance a situation where detainees face the choice between continued incarceration or show-trial-like false confessions before they satisfy ICE's standard of "cooperation."

**Ability to Pursue Review from Abroad**

In a footnote, Supplement at 2 n.1, Respondents raise an argument they did not present in their Return, and so was not addressed in the Traverse. Respondents argue that Petitioner should agree to removal while his appeal is pending, because he can legally pursue his petition for review in the courts from abroad. This argument is a scaled-down version of Respondents' "voluntary detention" theory which has been rejected repeatedly by other judges of this Court. See Straube v. Chertoff, ___ F. Supp. 2d ___, 2008 WL 2469999, at *4 (S.D. Cal. 2008); Mau v. Chertoff, 549 F. Supp.2d 1247, 1251-52 (S.D. Cal. 2008). As Judge Miller observed in Straube, although *judicial review* can be prosecuted from abroad, the governing regulations expressly *forbid* pursuing administrative remedies after leaving the country, whether voluntarily or involuntarily. See Straube, 2008 WL 2469999, at *4. Thus, if Petitioner were to win his petition for review, the inevitable remand to the BIA and thence to the IJ would be foreclosed once he had left the country. See 8 C.F.R. § 1003.3(e) (departure prior to appeal waives right to appeal to BIA); § 1003.4 (departure before resolution of appeal constitutes withdrawal). Thus, Respondents' claim that agreeing to removal will not prejudice Petitioner's appeal is entirely vacuous, particularly in light of the fact that agreeing to return to the torturing country would surely moot out any basis for Petitioner's seeking CAT relief here or in any other country.

**The Delay in Removal Cannot Be Attributed to Petitioner**

Petitioner argued in his Traverse that any delay in removal caused by his single failure to sign application forms in August 2006 is entirely outweighed by the intransigence of the Kenyan authorities and the lack of diligence, and even resistance, of ICE. Traverse at 2-6. Although Petitioner did refuse to fill in forms on the mistaken, but good-faith, belief that signing would waive his appeal rights, ICE failed to request again that he sign the forms until the day Respondents' Return was due, in an attempt to create a Pelich argument. When Petitioner asked for a short delay to consult with counsel, ICE–desiring to provide a crucial exhibit for the Return–went ahead and filed a non-cooperation notice. After he talked to his attorney and now understood signing was not an appeal waiver, Petitioner agreed to fill in the forms, but ICE–satisfied with their evidence of "non-cooperation"–did not even bother to return to retrieve the forms.

Since that time, ICE still has not obtained permission to remove Petitioner. The disabilities of non-cooperation cease on a return to compliance. See 8 C.F.R. § 241.4(g)(1)(ii) (ICE has only "reasonable time" to remove detainee after return to compliance); Andreasyan v. Gonzales, 446 F.3d 1186, 1190 (W.D. Wash. 2006) (subsequent compliance moots the claim of non-cooperation); Ford v. Quarantillo, 142 F. Supp. 2d 585, 588 (D.N.J. 2001) (although alien had misrepresented his origin at first, correcting it before the removal period expired vitiated basis for continued detention). Whatever effect his earlier, good-faith actions may have had, the subsequent full cooperation of Petitioner, lack of diligence by ICE, and intransigence by Kenya place this case outside the ambit of Pelich. Indeed, Petitioner's long-standing, independent efforts to effect his removal from the United States and to secure all necessary documents, despite ICE's own non-cooperation, shows Petitioner cannot be rationally labeled "non-cooperative," notwithstanding Respondents' meritless, new accusations discussed above.

The instant case is similar in this regard to Mau, where the Tijani/Nadarajah petition was granted. In Mau, the petitioner was also detained in prolonged civil custody while his CAT claim was litigated in a petition for review in the Ninth Circuit. See 549 F. Supp. 2d at 1249. The petitioner had at one point refused to fill in travel applications to his native country, claiming he did not want to prejudice his CAT claim by seeking return there. Respondents argued non-cooperation based on these acts of good-faith mistake of law which are similar to those here. However, Judge Gonzalez rejected the argument, calling it a "red herring." Id. at 1252 n.1. The failure to remove the petitioner was not a result of his one-time failure to fill in

applications, but because of a stay of removal then in effect. See id. As the non-removal was not the result of any bad-faith acts of the petitioner, but due to a decision of the Court of Appeals, the argument failed.

Similarly here, Petitioner's one-time, good-faith, mistake of law is the not the reason that travel documents are still unavailable. ICE's failure to make even a second request to Petitioner for nearly 18 months was the major source of delay. Petitioner cannot be sanctioned for ICE's lack of diligence. See Ulysse v. DHS, 291 F. Supp. 2d 1318, 1324 n.11 (M.D. Fla. 2003) (extended detention does not apply when ICE made no efforts to deport during removal period). But now, over six months after Petitioner has fully complied, travel permission is *still not forthcoming*. Even if Petitioner were saddled with the burden of ICE's dilatory non-cooperation so that his period of "obstruction" ended in January 2008, he is *still entitled to release* under Zadvydas, since over six months have passed, and Kenya has not issued travel documents. The presumptively reasonable time limit set by the Supreme Court surely satisfies the regulatory grace period in 8 C.F.R. § 241.4(g)(1)(ii), so Respondents no longer have a legal basis to detain Petitioner further.

**Conclusion**

Petitioner has been held in civil custody in excess of the presumptively reasonable time for removal, even though no stay of removal is in effect. ICE's own lack of diligence is to blame, as well as the intransigence and reluctance of the Kenyan officials. Even if Petitioner's good-faith refusal can serve as a basis for tolling the removal initially, his return to compliance over six months ago provided ICE with a "reasonable time" to remove him, but they have failed. The new straws Respondents grasp at–truthful statements about the status of his appeal and unwillingness to return to his torturers' custody–are groundless in fact and law. On the basis of all the pleadings presented in this case, Petitioner is entitled to release forthwith on the customary conditions of supervision. See 8 U.S.C. § 1231(a)(3). If any questions or concerns remain, Petitioner urges the Court to schedule oral argument on the matter.[2]

DATED: 7/28/08

[signature] for
**SYLVESTER OWINO**
Petitioner

---

[2] Judges of this Court have recently found additional argument necessary and valuable in resolving the issues in Tijani/Nadarajah cases. See Mau v. Chertoff, ___ F. Supp.2d ___, 2008 WL 2397426, at *4 (S.D. Cal. 2008); Judulang v. Chertoff, ___ F. Supp.2d ___, 2008 WL 2397427, at *4 (S.D. Cal. 2008). Judges Moskowitz and Miller have spontaneously ordered oral argument on petitions in recent Tijani/Nadarajah cases, and both parties have requested Judge Sammartino to schedule oral argument in another.

# Appendix

KENYA POLICE

Your Ref: ......................

Our Ref. KL/CR/605/60

Kilimani Police Station

Box 19727

Nairobi

7 th October 1998

To: Eunice Akinyi

FROM: O.C.S KILIMANI POLICE STATION

SUBJECT: WARRANT OF ARREST SYLVESTER O. OTOLO

It is noted in our records that an outstanding warrant of arrest was issued for the above subjects arrest on the 10th / 5 / 98 by this department.

This subject must surrender to this department or authorities as such immediately.

Thank you

KILIMANI POLICE STATION
DATE...
NAIROBI

C.I
CHRISTOPHER KINUTHIA
O.C.S KILIMANI

# KENYA POLICE

UTUMISHI KWA WOTE
KENYA POLICE

Your Ref....................
Our Ref: BC/CR/406 97

Bar Ober Police Post,
Box 66,
SEGA.

9th Sept. 1997

Dear Madam,

**RE: OWINO O. SYLVESTER.**

This is to confirm to you that the above named was arrested and placed in our custody between 9th and 19th July 1997 (as per our records ) and was not charged.

He was arrested at Jera Market at his bicycle Repair Shop and was detained but never charged on the 9th July 1997. Any further enquiries in regard to the above named should be made through the undersigned.

**I.P. Langat**
**OIC BAR OBER POLICE POST**

I.P. LANGAT

Eunice Achieng
P. O. Box 239
SEGA
19th. 4. 2006

Dear Sylvester,

Much greetings with a Sincere hope that you are Still alive. Im fine but worried because all other family members went to exile due to political pressures. The State agents are still convinced that our family funds fugitives.

I thought you were completely lost for you have never communicated for the last four years. I only learnt of your current predicament from Erick ohene, I have tried to obtain the documents Erick asked for with little Success since the cops down here are very rude and Insist on being bribed, Infact, I Strongly advice you to Stay away for your Safety cannot be assured in the current circumstances.

I Pray that God will see you through your current problem, alot of people have died down here, your brother died in India, your dad also died am sorry to tell you but that is the way to everybody. I still stress that never make a mistake of coming back to Kenya soon, I will advice when the political pressure on the family has gone down.

I learnt of youre arrest and your lawyer contacts from Erick ohene. He has also stopped communicating.

Have these for now I will be in touch once I get any communication from your lawyer.

Bye cousin
Eunice.

Prescription

- Paradol 2x2 for 6 d
- Brufen 2x1 for 3 day
- Wound dressing dressing after 2 alterna days
- Piriton 1x1 for 4 da
- Hydrocortisien ointmen
- Septrin 2x2 for 3 d

Dr. Robert Oketch

PENSARY P.O. BOX

Follow-up on 26/07/97

IMUNIZATION

| | DATE | T.C.A. |
|---|---|---|
| BCG | | |
| OPV 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| PENTAVANT 1 | | |
| 2 | | |
| 3 | | |
| MEASLES 1 | | |
| T.T. 2 | | |
| 3 | | |
| | | |
| BOOSTERS | | |

10/=

MINISTRY OF HEALTH

**HEALTH PASSPORT**

## JERA DISPENSARY

P. O. BOX 61,
SEGA.

OP NO.: CWC.4659/06

NAME: SYLVESTER O. OTOLO

AGE: 22 YRS SEX: M

RESIDENCE: JERA

**CASH SALE**

P. O. Box Z Tel:

M Sylvester Otolo Olwaa Date: 19-7/97

Bot of Patient (OPFER) 4659/06

| Qty | Details | Shs. | Cts |
|---|---|---|---|
| | Drugs | | |
| E&O.E No. | | 100 | 00 |

Goods once sold are not returnable

DATE: 19/07/97

OPNO 4659/06

Symptoms
- Headache
- cut on the left side of the eye consistent with a stab from a sharp object
- Soreness mostly in the upper part of the body
- Chest pains
- Dizziness
- Skin rapture (face)

c/o Physical assault

Temp 101°

PTO

James Fife/CASG/09/FDO
07/28/2008 07:47 AM

To Sylvia Freeman/CASG/09/FDO@FDO
cc
bcc
Subject Fw: Electronic Filing in Case#: 2:07-mj-08333-PCL.

----- Forwarded by James Fife/CASG/09/FDO on 07/28/2008 07:47 AM -----

efile_information@casd.uscourts.gov
07/28/2008 07:33 AM
Please respond to efile_information@casd.uscourts.gov

To james_fife@fd.org
cc
Subject Electronic Filing in Case#: 2:07-mj-08333-PCL.

Case Number: 2:07-mj-08333-PCL,
Judge Peter C. Lewis, presiding

Document Number: 22
Event selected: Notice (Other)
DocketText: NOTICE <I>of Motions Regarding Extradition Hearing</I> by Jose Antonio Velasco Hernandez (Attachments: # (1) Memo of Points and Authorities)(Fife, James)
*******************************************************

Dear James Fife,

Thank you for filing the above documents electronically.

The above document number was filed using the wrong event. The event that should have been used is MOTION. The document was filed as a NOTICE resulting in the motion not being on the pending motion report. Please refile the motion as a three-part motion and attach the points and authorities and proof of service again.

Thank you for your attention to this issue. If you have any questions with regard to this or any future filings, please contact us at 866-233-7983.

Quality Control (mam)
Clerk's Office, U.S. District Court
efile_information@casd.uscourts.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO, [A97-469-354] | ) Case No. 07cv2267-WQH (POR) |
| Plaintiff, | ) |
| sv. | ) PROOF OF SERVICE |
| MICHAEL CHERTOFF, et al., | ) |
| Defendant. | ) |

I, the undersigned, say:

1) That I am over eighteen years of age, a resident of the County of San Diego, State of California, and not a party in the within action;

2) That my business address is 225 Broadway, Suite 900, San Diego, California, 92101;

3) That I served the within **COURT ORDERED RESPONSE TO STATUS REPORT**, placing a true copy of the above-mentioned document in the United States mail on July 28, 2008, to:

**Sammuel W. Bettwy**
Assistant U S Attorney
880 Front Street
Suite 6253
San Diego, CA 92101

I certify under the laws of the State of California that the foregoing is true and correct. Executed on 28 July 2008 at San Diego, California.

SYLVIA FREEMAN