KAREN P. HEWITT
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California State Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7119

Attorneys for Federal Respondents

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER OWINO, Petitioner, v. MICHAEL CHERTOFF, Secretary of Homeland Security, al., Respondents. | No. 07cv2267-WQH (POR) A97 469 354 **EXHIBIT** |

Opinion in Casas-Castrillon v. D.H.S., -- F.3d --, No. 07-56261 (9th Cir. July 25, 2008)

FILED

JUL 25 2008

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUIS FELIPE CASAS-CASTRILLON,<br><br>Petitioner - Appellant,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY; BILL LOCKYER, Attorney General; US ATTORNEY GENERAL,<br><br>Respondents - Appellees. | No. 07-56261<br><br>D.C. No. CV-05-01552-BEN<br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted January 7, 2008
Pasadena, California

Filed July 25,2008

Before: Jerome Farris, Raymond C. Fisher and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Fisher

RAYMOND C. FISHER, Circuit Judge:

This appeal concerns whether the government may detain an alien who is a legal permanent resident of the United States for seven years without providing him with an adequate opportunity to contest the necessity of his detention before a

neutral decision maker. We conclude that a prolonged detention must be accompanied by appropriate procedural safeguards, including a hearing to establish whether releasing the alien would pose a danger to the community or a flight risk.

Luis Felipe Casas-Castrillon ("Casas") is a native and citizen of Colombia and has been a legal permanent resident of the United States since 1990. He was served with a notice to appear and detained by the Immigration and Naturalization Service in August 2001, following his release from a state prison for a conviction on an auto burglary charge.[1] An immigration judge ("IJ") found that Casas was a removable alien because he had been convicted of two crimes involving moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(ii) (providing that "[a]ny alien who . . . is convicted of two or more crimes involving moral turpitude . . . is deportable").[2] Casas appealed this determination to the Board of Immigration Appeals ("BIA"), which affirmed the removal order in July 2002.

From that time until the present, Casas has remained in the continuous custody of the federal government while he has pursued various avenues of relief

---

[1] On March 1, 2003, the INS was dissolved as an independent agency within the Department of Justice and its functions were transferred to the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205.

[2] Hereinafter, all citations are to Title 8 of the U.S. Code unless otherwise noted.

from removal in the federal district court and the court of appeals, some successful and some not. While he has sought judicial review, his removal has been stayed by court orders for much of the period from 2002 to the present. As of the time that this opinion is filed, Casas is now back before the BIA after this court granted his petition for review of his final order of removal. During this nearly seven-year period of detention, it is unclear what, if any, opportunity Casas has had to argue to a neutral decision maker that his detention is unnecessary because he does not pose a danger to the community or a flight risk.

Casas filed the instant petition for habeas corpus under 28 U.S.C. § 2241 on August 4, 2005. At that time, his administrative proceedings had been complete for approximately three years, but he was awaiting our court's review of his timely filed petition for review of his final removal order. In his pro se habeas petition to the district court, Casas argued that his detention had become indefinite and was therefore not authorized by any statute, and that his prolonged detention without a meaningful opportunity to contest the necessity of continued detention violated his right to procedural due process. The district court denied Casas' petition on August 15, 2007, and we granted expedited review. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we reverse.

## I.

As we explained in *Prieto-Romero v. Clark*, No. 07-35458, slip op. at 9292 (9th Cir. July 25, 2008), Casas' entitlement to relief turns in part on locating him within the statutory framework of detention authority provided by Sections 236 and 241 of the Immigration and Naturalization Act, codified at 8 U.S.C. §§ 1226 and 1231. This is because "[w]here an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* Casas and the government vigorously dispute which statutory provision governs his detention. We conclude that Congress has provided the Attorney General with authority to detain Casas under § 1226(a), which gives the Attorney General a broad grant of discretionary authority to detain an alien "pending a decision on whether the alien is to be removed from the United States."

**A.**

The statutory scheme governing the detention of aliens in removal proceedings is not static; rather, the Attorney General's authority over an alien's detention shifts as the alien moves through different phases of administrative and judicial review. This makes the task of determining where an alien falls within this scheme particularly difficult for a reviewing court, because the Attorney General's authority over the alien can present a moving target. The Attorney General's

authority over the alien at the time his habeas corpus petition is filed may differ from the authority at the time we hear oral argument on appeal, which may differ in turn from the authority at the time our opinion is filed. Casas' own case presents this problem, because we have considered, granted and remanded Casas' petition for review of his removal order during the same period that we have been considering on appeal his habeas corpus challenge, actions that arguably affect the Attorney General's statutory authority over his detention.

To determine by what authority the Attorney General currently may detain Casas, it is helpful to begin with the Attorney General's authority to detain Casas initially – detention authority Casas does not dispute. Casas was charged with being removable for having committed two crimes involving moral turpitude, and Congress has mandated that such aliens must be taken into custody at the time they are charged. *See* § 1226(c)(1)(B) ("The Attorney General *shall* take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii). . . .") (emphasis added). The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here. *See* § 1226(c)(2). Unlike noncriminal aliens, who are detained under § 1226(a), aliens detained under § 1226(c) are not given a bond hearing before an IJ. Thus these aliens do not have the opportunity to show – as

noncriminal aliens would – that their detention is unnecessary because they do not pose a danger to the community or a flight risk.

Although the Attorney General's initial statutory authority to detain Casas is undisputed, both parties agree that § 1226(c) at some point no longer governed Casas' detention. As Casas' case ably demonstrates, aliens challenging an order of removal may languish in the system for years. Even after the BIA has entered a final order of removal, an alien may petition for review of that removal order with the court of appeals in the judicial circuit in which his immigration proceedings occurred. *See* § 1252(b). Before Congress enacted the REAL ID Act ("RIDA") in May 2005, Pub. L. No. 109-13, Div. B, 199 Stat. § 231 (2005), certain aliens could also obtain judicial review of constitutional questions or questions of law raised by their final orders of removal through a petition for habeas corpus brought in the district court. *See Flores-Miramontes v. INS*, 212 F.3d 1133 (9th Cir. 2000). Even post-RIDA, aliens may continue to bring collateral legal challenges to the Attorney General's detention authority – such as in this case – through a petition for habeas corpus. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006) (holding that "the jurisdiction-stripping provision [of RIDA] does not apply to federal habeas corpus petitions that do not involve final orders of removal"). The courts of appeals have the authority to enter judicial stays of removal for aliens who have

petitions for review or habeas corpus petitions pending. *See* § 1252(b)(3)(B). This means that many aliens may continue to be detained for months, if not years, after their removal order is finalized by the agency, while they seek review of the legal or factual basis for their removal.

Casas has himself explored all of these possible avenues of review and relief. After the BIA affirmed his order of removal, Casas – acting pro se and apparently unfamiliar with the proper avenue for seeking review of his removal order – first filed with the district court in October 2002 a petition for habeas corpus, which was transferred to this court as a petition for review and subsequently dismissed for lack of jurisdiction in April 2004. Casas petitioned the Supreme Court for a writ of certiorari, which the Court denied in March 2005. *See* 544 U.S. 910 (2005). Having failed in his attempt to achieve direct review of his removal order, Casas then filed a number of additional petitions for habeas corpus with the district court. Some challenged his final order of removal and others collaterally attacked the state criminal convictions that had formed the basis of the charge of removal. Many of Casas' petitions to the district court were dismissed for lack of jurisdiction.

Casas finally succeeded in obtaining review of his removal order, however, because he had a petition for habeas corpus challenging his final removal order

pending before the district court on May 11, 2005, the date that Congress enacted RIDA. RIDA eliminated habeas corpus as an avenue for challenging a final order of removal, but specified that any habeas corpus petition pending before a district court on May 11, 2005 "shall" be transferred to the court of appeals, which "shall treat the transferred case as if it has been timely filed pursuant to a petition for review." *See* RIDA § 106(c); *see also Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052-53 (9th Cir. 2005). Pursuant to this act of Congress, the district court transferred Casas' habeas petition to our court, which, in accordance with Congress' instructions, treated it as a timely filed petition for review. In June 2006, we entered a stay of removal pending our disposition of his petition. We eventually granted Casas' petition for review in January 2008 and remanded to the BIA. *See Casas-Castrillon v. Mukasey*, No. 05-72553, 2008 WL 268949 (9th Cir. Jan. 31, 2008). Our mandate in that case issued in March 2008.

**B.**

Although Casas' road to judicial review of his removal order was surely unusual, the government concedes that at the time Casas filed his present petition for habeas corpus, he was properly understood to be an alien who was detained while awaiting review of a timely filed petition for review, and whose deportation was prevented by the entry of our judicial stay. The government argues that aliens

awaiting judicial review of their petitions for review become subject to continued detention under the Attorney General's grant of authority in § 1231(a), which provides for detention "during" and "beyond" the "removal period." As we explained in *Prieto-Romero*, we disagree. If an alien has filed a petition for review with this court and received a judicial stay of removal, the "removal period" under § 1231(a) does not begin until this court "denies the petition and withdraws the stay of removal." *Prieto-Romero*, slip op. at 9295. Therefore, Casas was not subject to detention under § 1231(a) at the time he filed his petition for habeas corpus while his petition for review was pending in this court.

Because § 1231(a) does not govern Casas' detention, we must determine which statute does. The statutory scheme presents two possible options: either Casas has remained in detention throughout this seven-year period under § 1226(c), which requires mandatory detention of criminal aliens, or at some point the detention authority shifted to § 1226(a), which gives the Attorney General general discretionary authority to detain an alien "pending a decision on whether the alien is to be removed from the United States." We reject the government's suggestion that § 1226(c) mandates Casas' detention for the duration of his now seven-year confinement. As we explained in *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005), § 1226(c)'s mandatory detention provision applies only to

"expedited removal of criminal aliens." The Supreme Court similarly recognized in *Demore v. Kim*, 538 U.S. 510 (2003), that § 1226(c) was intended only to "govern[] detention of deportable criminal aliens *pending their removal proceedings*," which the Court emphasized typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. *Id*. at 527-28, 530 (emphasis in original). The Department of Homeland Security ("DHS") has similarly interpreted § 1226(c) to apply only "during removal proceedings." *See* 8 C.F.R. § 236.1(c)(1)(i). The "conclusion of proceedings" occurs upon the dismissal of the alien's appeal by the BIA. *See id*. § 1241.1(a).

Because neither § 1231(a) nor § 1226(c) governs the prolonged detention of aliens awaiting judicial review of their removal orders, we conclude that Casas' detention was authorized during this period under the Attorney General's general, discretionary detention authority under § 1226(a). Section 1226(a) authorizes the Attorney General to detain an alien "pending a decision on whether the alien is to be removed from the United States." Again, as we explained in *Prieto-Romero*, "[i]t is reasonable to consider the judicial review of a removal order as part of the process of making an ultimate 'decision' as to whether an alien 'is to be

removed.'" Slip op. at 9300. Once Casas' proceedings before the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended and that authority shifted instead to § 1226(a).

We lastly reject the government's suggestion that, even if Casas was not subject to detention under § 1226(c) while his petition for review was pending on appeal, he became subject to such custody again after we granted his petition for review and remanded his case to the BIA. An alien whose case is being adjudicated before the agency for a second time – *after* having fought his case in this court and won, a process which often takes more than a year – has not received expeditious process. *See Tijani*, 430 F.3d at 1242. We therefore conclude that the mandatory, bureaucratic detention of aliens under § 1226(c) was intended to apply for only a limited time and ended in this case when the BIA affirmed Casas' order of removal in July 2002. Thereafter, the Attorney General's detention authority rests with § 1226(a) until the alien enters his "removal period," which occurs only after we have rejected his final petition for review or his time to seek such review expires. *See Prieto-Romero*, slip op. at 9295.

**II.**

Having determined that the government's authority to detain Casas falls under § 1226(a), we now turn to the question of whether Casas is entitled to any habeas corpus relief.

**A.**

Casas first argues that he is entitled to release from detention because his detention has become prolonged and is potentially indefinite and Congress has not statutorily authorized such detention. Although Casas' nearly seven-year detention certainly qualifies as prolonged by any measure, we hold that the government retains authority to detain him under § 1226(a) because Casas faces a significant likelihood of removal to Colombia once his judicial and administrative review process is complete.

In *Prieto-Romero*, we concluded that an alien whose removal had been delayed "while he pursues judicial review of his administratively final order of removal" had failed to show that his detention was unauthorized by statute, where there was "nothing, such as a lack of a repatriation agreement with his home country or a finding that he merit[ed] mandatory relief from removal, that would prevent [his] removal . . . if he is ultimately unsuccessful in his petition for review." Slip op. at 9305. Here, Casas was found removable by both the immigration judge and the BIA, but he repeatedly sought judicial relief from that

determination and stays of removal, which delayed his deportation. After we granted his petition for review, the government, on remand, is again seeking to establish that Casas is removable as charged. Should the government succeed, there is nothing, such as a lack of a repatriation agreement with his home country or a finding that he merits mandatory relief from removal, that prevents Casas' removal to Colombia if he ultimately fails in fighting the government's charge of removability. Accordingly, we hold that the government retains an interest in "assuring [Casas'] presence at removal," and his continued detention remains authorized by Congress. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Prieto-Romero*, slip op. at 9305.

**B.**

Although we agree with the government that Casas' detention is authorized under § 1226(a) because he remains capable of being removed, Casas raises a second challenge to the legality of his detention – whether the government may detain him for such a prolonged period without providing an individualized determination as to the necessity of his detention. Even though Casas' detention is permitted by statute because keeping him in custody *could* serve a legitimate immigration purpose, Casas may nonetheless have the right to contest before a neutral decision maker whether the government's purported interest is *actually*

served by detention *in his case*. There is a difference between detention being authorized and being necessary as to any particular person. We hold that the government may not detain a legal permanent resident such as Casas for a prolonged period without providing him a neutral forum in which to contest the necessity of his continued detention.

In *Demore*, the Supreme Court considered a constitutional challenge to the mandatory detention provision of § 1226(c). The primary question before the Court was not whether detention under § 1226(c) violated substantive due process because the alien's detention was indefinite, but rather whether procedural due process required the government to make an individualized finding that detention was justified by a legitimate government interest, such as protecting the community or ensuring the alien's appearance at removal proceedings. *See Demore*, 538 U.S. at 524 (explaining that the aliens were "challeng[ing] their detention on the grounds that there had been no finding that they were unlikely to appear for their deportation proceedings when ordered to do so"). As the Court recognized, there is little question that the civil detention of deportable aliens during removal proceedings can serve the legitimate government purpose of "preventing deportable . . . aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be

successfully removed." *Id*. at 528. However, it was not clear that Congress could authorize the detention of criminal aliens *as a class*, without providing the individual alien with an opportunity to show that his detention is not necessary to secure his presence at the time of removal.

The Supreme Court upheld § 1226(c)'s mandatory detention provision in *Demore*, but did so with the specific understanding that § 1226(c) authorized mandatory detention only for the "limited period of [the alien's] removal proceedings," which the Court estimated "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. *Id*. at 530. References to the brevity of mandatory detention under § 1226(c) run throughout *Demore*. *See id*. at 513 ("Congress . . . may require that [criminal aliens] be detained for the brief period necessary for their removal proceedings."); *id*. at 523 (noting that the question under consideration was whether "the Government may . . . detain [criminal aliens] for the brief period necessary for his removal proceedings"); *id*. at 526 (noting the "Court's longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings"); *id*. at 529 n.12 (noting "[t]he very limited time of the detention at stake"). Casas' nearly seven-year detention, if

unaccompanied by meaningful, individualized review, would clearly be a far longer period of detention than the "brief" period of mandatory detention during administrative review that the Supreme Court approved in *Demore*.

The question before us, therefore, is whether legal permanent residents such as Casas, who have been subjected to prolonged detention pending judicial review of their final order of removal or agency reconsideration on remand, may continue to be detained by the Attorney General without receiving an individualized determination of the necessity of detention before a neutral decision maker, such as an immigration judge. We conclude that prolonged detention without adequate procedural protections would raise serious constitutional concerns. As the Supreme Court has repeatedly reaffirmed, "'the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'" *Demore*, 538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Detention during judicial review – like the detention during removal proceedings that *Demore* considered – may serve the purpose of "preventing deportable . . . aliens from fleeing[,] . . . thus increasing the chance that, if ordered removed, the alien will be successfully removed." *Id.* at 528. Even where detention is permissible, however, due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally

protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted). We are skeptical that *Demore*'s limited holding that Congress could permissibly authorize "brief" detention without procedural protections can be extended to encompass the nearly seven-year detention at issue here.

We need not resolve this constitutional question, however, because we find no evidence that Congress intended to authorize the long-term detention of aliens such as Casas without providing them access to a bond hearing before an immigration judge. In *Tijani*, we held that an alien initially detained under § 1226(c) could not continue to be detained during his judicial review process unless he was afforded an individualized hearing before an IJ. *See* 430 F.3d at 1242. Like Casas, Tijani was a legal permanent resident. *See id*. at 1250 (Callahan, J., dissenting). By the time we issued our decision in his case, he had been detained for two years and eight months, with approximately 20 months of his detention occurring during his removal proceedings. *See id*. at 1246 (Tashima, J., concurring). Also like Casas, Tijani had filed a petition for review with our court – which accounted for 10 months of his 30-month detention – and we noted that Tijani could be expected to be detained for another "year or more" while we completed our review of his removal order. *Id*. at 1242. We then concluded that

Tijani's mandatory detention throughout this period was not authorized under § 1226(c), because § 1226(c) applies only to "expedited removal of criminal aliens," and "[t]wo years and eight months of process is not expeditious." *Id*. Applying the doctrine of constitutional avoidance, we concluded that Tijani's prolonged mandatory detention was not authorized by that statute. We therefore held that the government must provide Tijani "a hearing . . . before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community." *Id*.

Although its reasoning was sparse, we believe *Tijani* was correct that § 1226(c) does not authorize prolonged mandatory detention after an alien's administrative proceedings are complete. Rather, these aliens are detained under the Attorney General's broader grant of discretionary authority under § 1226(a). Further, such prolonged detention of aliens is permissible only where the Attorney General finds such detention individually necessary by providing the alien with an adequate opportunity to contest the necessity of his detention. Section 1226(a), unlike § 1226(c), provides such authority for the Attorney General to conduct a bond hearing and release the alien on bond or detain him if necessary to secure his presence at removal. *See* § 1226(a)(2). Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk

would be "constitutionally doubtful," we hold that § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing. *See Tijani*, 430 F.3d at 1242. Thus an alien is entitled to release on bond unless the "government establishes that he is a flight risk or will be a danger to the community." *Id*. (citing *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)).

Unfortunately, we cannot ascertain from the record before us whether Casas has been afforded an adequate opportunity to challenge the necessity of his detention. The only evidence in the record showing that Casas has received any procedural review relates to a file review he received in November 2005. At that time, two Immigration and Customs Enforcement ("ICE") field officers filled out a "Post-Order Custody Review Worksheet" and recommended that Casas remain in custody because he "would be a flight risk," a determination that was then approved by an ICE field director. Although these ICE officials reviewed Casas' record when making their determination, they did not interview him personally or by telephone. It is not clear from the record whether Casas was even notified of this impending review or whether he was given an opportunity to contest the facts on which the ICE officials based their decision.[3] There is no indication that he had

[3] The record contains a "Notice of Alien of File Custody Review," which explained that Casas' detention status would be reviewed in 90 days and that he (continued...)

a right to an administrative appeal. This review falls far short of the procedural protections afforded in ordinary bond hearings, where aliens may contest the necessity of their detention before an immigration judge and have an opportunity to appeal that determination to the BIA. *See* 8 C.F.R. § 236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37, 38-40 (BIA 2006).

Although neither party submitted any evidence showing that Casas has ever received an ordinary bond hearing, we take judicial notice of Casas' administrative record, which shows he received a bond hearing in January 2002 under unusual circumstances. While Casas' case was still pending before the agency in January 2002, this court held that mandatory, bureaucratic detention of legal permanent residents under § 1226(c) was unconstitutional. *See Kim v. Ziglar*, 276 F.3d 523, 526 (9th Cir. 2002), *rev'd by Demore v. Kim*, 538 U.S. 510 (2003). Pursuant to our decision in *Kim*, the agency provided Casas with a bond hearing, at which he was found eligible for bond. The amount was set at $25,000, a sum Casas was unable to pay. Casas appealed the bond determination to the BIA, but the BIA upheld the amount in April 2002. Approximately one year later, the Supreme Court

[3](...continued)
would have the opportunity to demonstrate to the satisfaction of the Attorney General that he was neither a danger to the community nor a flight risk. This notice is undated but contains the handwritten notation "10/04," which may indicate that it was sent more than a year before Casas' November 2005 file review.

overturned our decision and held that mandatory detention of criminal aliens for "the limited period of his removal proceedings" does not violate the Due Process Clause. *Demore*, 538 U.S. at 531. It is not clear what, if any, continued legal effect this bond hearing has, given that it was ordered pursuant to a now-vacated constitutional ruling.

Because the parties did not develop an adequate record of the procedural review that Casas has received, we cannot determine whether the government has afforded him a bond hearing that complies with the requirements of *Tijani*. We therefore reverse the district court and remand with instructions to grant the writ unless, within 60 days, the government provides Casas with "a hearing . . . before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community," or shows that he has already received such a bond hearing. *Tijani*, 430 F.3d at 1242.

**REVERSED AND REMANDED**.

## Counsel

James Fife, Federal Defenders of San Diego, Inc., San Diego, California, for the petitioner-appellant.

Karen P. Hewitt, United States Attorney; Thomas Stahl and Samuel W. Bettwy, Assistant United States Attorneys, and Thomas Dupree (argued), United States Department of Justice, Washington, D.C., for the respondents-appellees.

Judy Rabinovitz, ACLU Foundation, New York, New York; Cecillia D. Wang, ACLU Foundation, San Francisco, California; Ahilan T. Arulanantham and Ranjana Natarajan, ACLU Foundation of Southern California, Los Angeles, California; Jayashri Srikantiah, Stanford Law School Immigrants' Rights Clinic, Stanford, California; for the *amicus curiae* ACLU Foundation and ACLU Foundation of Southern California.

Rachael Keast, Florence Immigrant and Refugee Rights Project, Florence, Arizona; Nancy Morawetz, Washington Square Legal Services, Inc., New York, New York; for the *amicus curiae* the Florence Immigrant and Refugee Rights Project, the American-Arab Anti-Discrimination Committee, the American Immigration Lawyers Association, the Asian Law Caucus, the Center for Constitutional Rights, the Center for Gender and Refugee Studies, the Cornell Asylum and Convention Against Torture Appellate Law Clinic, Hate Free Zone, Human Rights Watch, the International Detention Coalition, the Northwest Immigrant Rights Project, Minnesota Advocates for Human Rights, the National Immigrant Justice Center, the National Immigration Project of the National Lawyers Guild, the New York State Defenders Association Immigrant Defense Project and the U.C. Davis Immigration Law Clinic.