**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SYLVESTER OWINO, Petitioner, vs. MICHAEL CHERTOFF, Secretary of Homeland Security, et al., Respondents. | CASE NO. 07cv2267 WQH (POR) **ORDER** |

HAYES, Judge:

The matter before the Court is the Petition for Writ of Habeas Corpus (Doc. # 1) filed by Petitioner Sylvester Owino.

**<u>Background</u>**

Petitioner is a native and citizen of Kenya. *Petition,* p. 3. On December 16, 1998, Petitioner was admitted to the United States on a student visa. *Id.* In 2003, Petitioner was convicted of second degree robbery and sentenced to three years in prison. *Id.* On November 8, 2005, upon completion of the term of imprisonment, Petitioner was transferred to Department of Homeland Security ("DHS") custody. *Id.*

On April 10, 2006, a removal hearing was held and the Immigration Judge ("IJ") found Petitioner removable, denied his application for asylum and withholding of removal, denied his claim for deferral of removal under the Convention Against Torture ("CAT"), and made

an adverse credibility finding. *Id.* Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed Petitioner's appeal. *Id.; Return,* Exhibits, p. 9.

On September 1, 2006, Petitioner filed a timely petition for review of his removal order with the United States Court of Appeals for the Ninth Circuit. *Id.* On September 1, 2006, Petitioner also moved for a stay of removal pending his appeal of his removal order. On February 23, 2007, the Ninth Circuit denied the motion to stay. On June 5, 2007, the Ninth Circuit denied Petitioner's motion for reconsideration of the motion to stay as untimely. *Petition,* p. 3. On June 5, 2007, Petitioner filed his opening brief for his appeal of his removal order with the Ninth Circuit. On June 25, 2007, Respondents filed their brief. On September 10, 2007, Petitioner filed his reply. *Id.* at 4. Petitioner's appeal awaits assignment to a merits panel for argument and submission. *Id.*

On December 3, 2007, Petitioner filed the Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. (Doc. #1). The Petition alleges that Petitioner has been subjected to prolonged detention because he has been in DHS custody since November 8, 2005, and his order of removal is currently on review in the Ninth Circuit. The Petition alleges that Petitioner's detention is unlawful under *Tijani v. Willis,* 430 F.3d 1241 (9th Cir. 2005), and *Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir. 2006), which apply the Supreme Court's principles on indefinite detention laid down in *Zadvydas v. Davis*, 553 U.S. 678 (2001), to detainees who are subject to prolonged detention and with an order of removal on review. The Petition requests that this Court order Respondents to release him from custody under the conditions of supervision set forth in 8 U.S.C. § 1231(a)(3). Alternatively, the Petition requests that the Court order a release hearing to evaluate Petitioner's eligibility for supervision under appropriate conditions.

On January 18, 2008, Respondents filed a return in opposition to the Petition. (Doc. # 9). Respondents assert that DHS has not removed Petitioner because he has failed to cooperate in submitting an application for travel documents to the Kenyan embassy. On February 15, 2008, Petitioner filed a traverse to the Petition. (Doc. # 13). Petitioner asserts that his past

refusal to sign an application for travel documents was in good faith and based on Petitioner's belief that signing an application for travel documents would vitiate his right to appeal the BIA decision.

On April 30, 2008, this Court issued an order requiring Respondents to file a status report as to Petitioner's application for travel documents and efforts to secure Petitioner's removal. (Doc. # 15).

On May 19, 2008, Respondents filed a status report. (Doc. # 17). Respondents assert that Petitioner is not entitled to habeas relief because Petitioner's "further detention is voluntary given his own actions which delayed the issuance of a travel document from the Kenyan Consulate." *Id.* at 2. Respondents state that Petitioner has taken affirmative actions which have hampered his repatriation to Kenya, such as "making a communication to the Kenyan Consulate that has had the effect of discouraging the Consulate from issuing a travel document." *Id.* at 1.

On May 29, 2008, Petitioner filed a declaration updating the status of his travel document request. (Doc. # 19). Petitioner contends that he has not taken actions to hamper his repatriation to Kenya. In Petitioner's declaration updating status of travel document request, Petitioner attests that it is his understanding that the Kenyan embassy will not approve travel documents to Kenya unless he presents his Kenyan passport; that his passport was lost after he was arrested; that a police report showing the passport was necessary in order for Petitioner to obtain a replacement passport; and that ICE deportation officers have not cooperated in helping Petitioner secure the necessary documents to request the police reports required in order to obtain a replacement passport. " *Id.* ¶¶ 2-5. Petitioner attests that Officer Hayes informed Petitioner that it would not assist him in obtaining the police report because a passport was not needed to obtain travel documents to Kenya. Petitioner attests that "I explained that I needed a replacement passport to facilitate my efforts to obtain asylum in a third country." *Id.* ¶ 6.

On June 12, 2008, Respondents filed a supplement to the status report. (Doc. # 20). In Respondents' supplement to the status report, Respondents state that Deportation Officer Eliana Hayes, the Deportation Officer assigned to Petitioner's case, "determined that the Kenyan consulate is willing to issue a travel document if Owino states that he is willing to return to Kenya. However, because Owino, through an attorney, recently notified the consulate that he has an appeal pending before the Ninth Circuit (even though his motion to stay removal was denied by the Ninth Circuit on June 5, 2007), and because Owino has expressed his unwillingness to return to Kenya pending those proceedings, the Kenyan consulate is unwilling to issue the travel document." *Id.* at 1. Respondents submitted the declaration of Deportation Officer Hayes, who attests that on June 5, 2008, the consular officer at the Kenyan Consulate "told me that ICE does not need a police report to obtain an emergency travel document for Owino and that she will not issue a travel document to Owino until there are no longer any appeals pending." *Id.*, Exhibit 1. Deportation Officer Hayes attests that on June 6, 2008, "I talked with [the consular officer] again about the consulate's refusal to issue a travel document as long as Owino's Ninth Circuit appeal is pending. She stated that Owino need only tell the consulate that he would like to return home and they would issue him a travel document regardless of what is pending. So, the power to return to his home in Kenya is in Owino's hands." *Id.*

On July 2, 2008, this Court issued an order which provided that Petitioner shall file any response to Respondents' supplement to status report. With regard to the authority to detain Petitioner, the Court concluded that 8 U.S.C. section 1231, rather than section 1226, governs Petitioner's detention. With regard to the legality of Petitioner's detention, the Court stated:

> Respondents' evidence demonstrates that a police report reporting Petitioner's passport as missing is not necessary to obtain a travel document to Kenya, and that Kenya will issue a travel document despite Petitioner's pending appeal. Respondents have produced evidence which demonstrates that Petitioner "need only tell the consulate that he would like to return home and they would issue him a travel document regardless of what is pending." (Doc. # 20, p. 2). Prior to ruling on the merits of the Petition, the Court will allow Petitioner to submit any argument or evidence to rebut Respondents' supplement to status report.

(Doc. # 22, p. 7).

On July 28, 2008, Petitioner filed a response to Respondents' status report (Doc. # 24). Petitioner contends that his unwillingness to tell the Kenyan Consulate that he would like to return home should not preclude a finding that Petitioner has met his burden of demonstrating that there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Petitioner states:

> In light of the fact that Petitioner has suffered inhumane treatment and torture for political reasons at the hands of the Kenyan police and that an arrest warrant it still outstanding . . . it is not surprising that Petitioner is not willing to 'tell the consulate that he would like to return home,' where he will be subject to immediate arrest and further abuse for having raised a CAT claim against the government, all in addition to the original political and ethnic animus officials bear against him. In other words, Respondents fault Petitioner's lack of cooperation for failing to lie about his reluctance to return to Kenya. That is not a legitimate basis for a finding of obstruction.

(Doc. # 24, p. 6).

## <u>Applicable Law</u>

8 U.S.C. section 1231 provides that once an alien is subject to a final order of removal, "the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1). Pursuant to 8 U.S.C. section 1231(a)(3), if the alien is not removed within this 90 day removal period, the alien, pending removal, shall be released subject to supervision under regulations prescribed by the Attorney General. Section 1231(a)(6) provides that an alien subject to a final order of removal "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond" the 90 day removal period. 8 U.S.C. § 1231(a)(6).

The authority under section 1231(a)(6) to detain an alien beyond the 90 day removal period is not absolute. If, after six months of post-removal detention, an "alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. The Supreme Court rejected the contention that continued detention is lawful as long as "good faith efforts to effectuate . . . deportation continue," and concluded that "this standard would seem to require an alien seeking release to show the absence of *any* prospect of removal - no matter how unlikely or unforeseeable - which

demands more than our reading of the statute can bear." *Id.* at 702. As the "period for confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Section 1231(a)(1)(C) provides that the post-removal detention period "shall be extended . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure." 8 U.S.C. § 1231(a)(1)(C). "[N]otwithstanding *Zadvydas,* the statutory exception of 8 U.S.C. § 1231(a)(1)(C) . . . authorizes [DHS] to continue detaining an alien whose refusal to apply in good faith for travel documents prevents [DHS] from removing him from the United States." *Lema v. INS,* 341 F.3d 853, 856 (9th Cir. 2003); *see also Pelich v. INS,* 329 F.3d 1057 (9th Cir. 2003). The Ninth Circuit has stated:

> [C]onsistent with *Zadvydas* and *Pelich,* . . . when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future. We cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas,* 533 U.S. at 690, until the alien makes a full and honest effort to secure travel documents.

*Lema,* 341 F.3d at 856. "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich,* 329 F.3d at 1060. The alien has the initial burden of showing no significant likelihood of removal in the reasonably foreseeable future; the alien cannot carry this burden when the alien does not fully and honestly cooperate with officials in obtaining travel documents from a foreign embassy. *Lema*, 341 F.3d at 856. District courts considering the issue ask whether the petitioner has the "keys to his freedom" in order to determine if the petitioner is preventing his own removal under section 1231(a)(1)(C). *Pelich,* 329 F.3d at 1060.

**Ruling of the Court**

The undisputed evidence in the record demonstrates the following: Petitioner initially refused to cooperate in signing an application for travel documents because he believed doing so would vitiate his right to appeal. Petitioner has requested a police report in order to obtain a replacement passport for the purpose of facilitating his repatriation to a third country. However, a police report is not necessary to obtain a travel document for Petitioner to travel to Kenya. The Kenyan Consulate will issue a travel document despite Petitioner's pending Ninth Circuit appeal. The Kenyan Consulate will issue a travel document to Kenya if Petitioner tells the Kenyan Consulate that he is willing to return home. After reviewing the record, the Court concludes the power for Petitioner to return to Kenya is in his hands because he need only tell the Kenyan Consulate that he would like to return home and the Kenyan Consulate will issue a travel document. Petitioner contends that he will be subject to immediate arrest and abuse if he returns to Kenya, and therefore cannot be faulted for refusing to tell the Kenyan Consulate that he is unwilling to return to Kenya. However, the IJ denied Petitioner's application for asylum and withholding of removal, and denied Petitioner's claim for deferral of removal under the CAT; the BIA dismissed Petitioner's appeal of the IJ's decision; and the Ninth Circuit denied a stay of Petitioner's removal pending Petitioner's appeal to the Ninth Circuit. In light of the foregoing, the Court concludes that Petitioner has failed to meet his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future because Petitioner has not made a full effort to secure travel documents.

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED.** It is further ordered that the Motion for Reconsideration (Doc. # 11) is **DENIED as moot.**

DATED: August 6, 2008

William Q. Hayes

**WILLIAM Q. HAYES**
United States District Judge